1   Kevin S. Asfour (SBN 228993)
    kevin.asfour@klgates.com
2   K&L GATES LLP
    10100 Santa Monica Blvd., 8th Floor
3   Los Angeles, California 90067
    Telephone: (310) 552-5000
4   Facsimile: (310) 552-5001

5   Loly G. Tor (*Pro Hac Vice*)
    K&L GATES LLP
6   One Newark Center, 10th Fl.
    Newark, NJ 07102
7   Tel: (973) 848-4026
    loly.tor@klgates.com
8
    *[Continued on next page]*
9
    Attorneys for Defendant
10  Amazon.com, Inc.

11                    UNITED STATES DISTRICT COURT

12                  SOUTHERN DISTRICT OF CALIFORNIA

13                          SAN DIEGO DIVISION

14

15  RUSSELL STEPHEN,                    Case No. 3:24-cv-0546-GPC-BLM

16          Plaintiff,                  **MEMORANDUM OF POINTS
                                        AND AUTHORITIES IN**
17      v.                              **SUPPORT OF DEFENDANT
                                        AMAZON.COM, INC'S MOTION**
18  NUTRA HOLDINGS, INC., NUTRA         **TO TRANSFER VENUE**
    HOLDINGS TWO, INC., AMAZON,
19  INC., and JOHN WILLIAMS,            Date:        June 28, 2024
                                        Time:        1:30 p.m.
20          Defendants.                 Courtroom:   2D
                                        Judge:       Hon. Gonzalo P. Curiel
21
                                        Trial Date:  None Set
22                                      Case Filed:  March 21, 2024

23

24

25

26

27

28

1   Jennifer J. Nagle (*Pro Hac Vice*)
Robert W. Sparkes, III (*Pro Hac Vice*)

2   K&L GATES LLP
One Congress Street, Suite 2900

3   Boston, MA 02114
Tel: (617) 261-3100

4   jennifer.nagle@klgates.com
robert.sparkes@klgates.com

5

6   Marvis A, Barnes II (*Pro Hac Vice*)
K&L GATES LLP

7   70 W. Madison Street, Suite 3100
Chicago, IL 60602

8   Tel: (312) 372-1121
marvis.barnes@klgates.com

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM IN SUPPORT OF
AMAZON'S MOTION TO TRANSFER
CASE NO. 3:24-CV-0546-GPC-BLM

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ........................................................................................ 1

II. STATEMENT OF FACTS ...................................................................... 2

    A. Plaintiff's Claims and Allegations ................................................ 2

    B. Plaintiff Agreed to Amazon's Conditions of Use on Multiple Occasions . 3

        1. Amazon provides clear and conspicuous notice of the Conditions of Use to Amazon.com customers. ............................................. 3

        2. Plaintiff accepted the Conditions of Use each time he logged in to Amazon.com and each time he purchased the Product. ..................... 4

    C. Amazon's Conditions of Use Contain an Exclusive Forum-Selection Clause. ................................................................................ 5

III. STANDARD OF REVIEW .................................................................. 5

IV. ARGUMENT ...................................................................................... 6

    A. Plaintiff Agreed to the Exclusive Forum-Selection Clause in Amazon's Conditions of Use and He is Bound by that Selection. ....................... 6

        1. Online terms of use form binding contracts if the parties have notice of and provide mutual assent to those terms. ................................ 6

        2. The Amazon COUs meet the criteria for enforceability of online terms of use. ......................................................................... 8

    B. The Forum-Selection Clause Applies to this Dispute. ...................... 11

    C. The Forum-Selection Clause Is Enforceable. ................................ 13

        1. Plaintiff cannot prove that the forum-selection clause is the product of fraud or overreaching. ......................................................... 13

        2. Transfer to the Western District of Washington would not violate any strong public policy of the State of California. ................................ 15

        3. Plaintiff cannot establish that the transfer of this action would effectively deprive him of his day in court. .................................. 15

        4. Transfer is appropriate under the public-interest factors of Section 1404(a). ............................................................................. 17

V. CONCLUSION ..................................................................................... 18

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adams v. Amazon.com, Inc.*, No. 7:23-cv-00121-EKD,
    2023 WL 4002534 (W.D. Va. Jun. 14, 2023).................................................11

*Atlantic Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Texas*,
    571 U.S. 49 (2013)..................................................................................*passim*

*Carnival Cruise Lines v. Shute*,
    499 U.S. 585 (1991)...........................................................................................14

*Crawford v. Beachbody, LLC*, No. 14-cv-1583-GPC(KSC),
    2014 WL 6606563 (S.D. Cal. Nov. 5, 2014)........................................*passim*

*Ekin v. Amazon Services, LLC*,
    84 F. Supp. 3d 1172 (W.D. Wash. 2014)........................................................10

*Ford Motor Co. v. Montana Eighth Judicial District Court*,
    592 U.S. 351 (2021)...........................................................................................18

*Greenberg v. Amazon.com, Inc.*, No. 20-CV-02782-JSW,
    2021 WL 7448530 (N.D. Cal. May 7, 2021)..................................................10

*Heinz v. Amazon.com, Inc.*, No. 2:23-cv-00282 WBS AC,
    2023 WL 4466904 (E.D. Cal. July 11, 2023)......................................*passim*

*Joseph v. Amazon.Com, Inc.*, No. C12-06256 HRL,
    2013 WL 4806462 (N.D. Cal. Sept. 9, 2013)..................................................12

*Kabbash v. Jewelry Channel, Inc. USA*, No. CV 15-4007 DMG (MRWx),
    2016 WL 9132930 (C.D. Cal. Feb. 22, 2016)................................................12

*Lee v. Fisher*,
    70 F.4th 1129 (9th Cir. 2023)............................................................................6

*Li v. Amazon.com Services LLC*, No. 23-cv-00441-AMO,
    2023 WL 8720669 (N.D. Cal. Dec. 18, 2023)...............................................10

*Lightfoot v. MoneyonMobile, Inc.*, No. 18-cv-07123-YGR,
    2019 WL 2476624 (N.D. Cal. June. 13, 2019)........................................17, 18

*Maynez v. Walmart, Inc.*,
    479 F. Supp. 3d 890 (C.D. Cal. 2020).................................................................7, 8

*McKee v. Audible, Inc.*, No. CV 17-1941-GW(EX),
    2017 WL 4685039 (C.D. Cal. July 17, 2017)..................................................10

*Moretti v. Hertz Corp.*, No. C 13-02972 JSW,
    2014 WL 1410432 (N.D. Cal. Apr. 11, 2014)..................................8, 12, 17

*M/S Bremen v. Zapata Off-Shore Co.*,
    407 U.S. 1 (1972).........................................................................................13

*Oberstein v. Live Nation Entertainment, Inc.*,
    60 F.4th 505 (9th Cir. 2023).............................................................7, 8, 9, 10

*Payne v. Amazon.com, Inc.*, No. 2:17-CV-2313-PMD,
    2018 WL 4489275 (D. S.C. July 25, 2018)......................................................11

*Peter v. DoorDash, Inc.*,
    445 F. Supp. 3d 580 (N.D. Cal. 2020)..................................................................7

*Plumleigh v. Metro. Fine Arts & Antiques Inc.*, No. SACV 14-1721-JLS-JCGX,
    2015 WL 13918387 (C.D. Cal. Jan. 21, 2015)...........................................6, 14

*Rochfort v. EF Inst. for Cultural Exch., Inc.*, No. 3:20-cv-00508-GPC-BLM,
    2020 WL 12833951 (S.D. Cal. Sept. 8, 2020)........................................13, 16

*Rosskamm v. Amazon.com, Inc.*,
    637 F. Supp. 3d 500 (N.D. Ohio 2022).............................................11, 12, 18

*Schumacher v. Amazon.com LLC*, No. SACV 11-01906-CJC-JPRX,
    2012 WL 13036856 (C.D. Cal. May 29, 2012)............................................16

*Skelton v. Care.com, Inc.*, No. 3:20-cv-02086-AJB-DEB,
    2021 WL 5862447 (S.D. Cal. Aug. 17, 2021)......................................8, 9, 14

*Sun v. Advanced China Healthcare, Inc.*,
    901 F.3d 1081 (9th Cir. 2018)..............................................12, 13, 15, 16

MEMORANDUM IN SUPPORT OF
AMAZON'S MOTION TO TRANSFER
CASE NO. 3:24-CV-0546-GPC-BLM

*Wilcosky v. Amazon.com, Inc.*,
    517 F. Supp. 3d 751 (N.D. Ill. 2021)...............................................................11

*Wiseley v. Amazon.com, Inc.*,
    709 F. App'x 862 (9th Cir. 2017)...................................................................10

**Statutes**

28 U.S.C. § 1404..............................................................................................*passim*

Cal. Bus. & Profs. Code, § 17200, *et seq.*................................................................ 3

1

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

Plaintiff Russell Stephen ("Plaintiff") challenges the marketing and sale of a dietary supplement called Androsurge (the "Product"), asserting claims that turn on his purchase of the Product from the Amazon.com store in 2023.   Defendant Amazon's[1] Conditions of Use ("COUs"), however, govern each of Plaintiff's purchases and expressly require that Plaintiff's claims be "adjudicated in the state or Federal courts in King County, Washington."   Accordingly, and for the following three reasons, the Court should transfer this action to the U.S. District Court for the Western District of Washington.

**First**, Plaintiff repeatedly agreed to the Amazon COUs and the exclusive forum-selection clause therein, including: (1) when he created his Amazon.com account; (2) each time he signed into his account; and (3) every time he purchased the Product (or any other product) from the Amazon.com store.   At the point-of-sale, for example, Amazon provided Plaintiff with conspicuous notice of the COUs. Specifically, right below the "Place your order" button that Plaintiff had to click to complete his purchases was an express notice informing Plaintiff that, by placing the order, he agreed to the COUs.   The words "conditions of use" appeared in blue text and hyperlinked to the COUs.   Courts throughout the United States, including district courts in the Ninth Circuit, have found that this checkout process sufficiently apprises purchasers of Amazon's COUs and binds those purchasers to the COUs' provisions.

**Second**, the forum-selection clause in the COUs plainly encompasses Plaintiff's claims.   The clause provides that "[a]ny dispute or claim relating in any way to [Plaintiff's] use of any Amazon Service" must be "adjudicated in the state or Federal courts in King County, Washington."   (*See* Declaration of Moni Lake ("Lake Decl."), dated April 25, 2024, at ¶ 16 & Ex. A, at 4.)   Plaintiff's claims undeniably

---

[1] Plaintiff's First Amended Complaint improperly names Defendant Amazon.com, Inc. as "Amazon, Inc."

relate to his "use of an[] Amazon Service," specifically his use of the Amazon.com store to purchase the Product.

*Finally*, as courts throughout the country have held, exclusive forum-selection clauses substantially like the one in Amazon's COUs are valid and enforceable. Indeed, courts regularly enforce the very same Amazon forum-selection clause at issue in this case.

For these reasons, and pursuant to 28 U.S.C. § 1404(a) and the U.S. Supreme Court's instruction that district courts should "ordinarily transfer" cases "to the forum specified" in a forum-selection clause (*Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013)), Amazon requests that the Court transfer this action to the Western District of Washington.

## II.    STATEMENT OF FACTS

### A.    Plaintiff's Claims and Allegations

Plaintiff originally filed this action in California Superior Court.  *See* Dkt. No. 1-2 (Compl.).  On January 31, 2024, Plaintiff filed a First Amended Complaint, naming Amazon as a defendant for the first time.  (*See* Dkt. No. 1-3 (First Am. Comp. ("FAC").)[2]  Amazon timely removed the action to this Court.  (*See* Dkt. No. 1.)

In the FAC, Plaintiff alleges that the marketing and sale of the Product violates the federal Food, Drug, and Cosmetic Act and the California Health & Safety Code because: (1) it constitutes an "unapproved new drug;" (2) its label and advertising allegedly contain false and misleading representations about its efficacy and thus it is "misbranded;" and (3) its label does not adequately identify the name and place of business of the manufacturer, packer, or distributor.  (FAC ¶¶ 62–86.)  Plaintiff alleges that Defendants Nutra Holdings, Inc., Nutra Holdings Two, Inc., and John Williams manufacture, market, distribute, and sell the Product and that Amazon "markets and sells" the Product in its Amazon.com store.  (*Id.* ¶¶ 3–11, 18–25.)

---

[2] The FAC also named Nutra Holdings Two, Inc. and John Williams as defendants for the first time.  (*See* FAC ¶¶ 17–22; *see also* Compl. ¶¶ 11–13 (naming only Nutra Holdings, Inc.).)

Plaintiff alleges that he purchased the Product "from Defendant Amazon's website in 2023." (*Id.* ¶ 96.)  He further alleges that he would not have bought the Product "had he known that [it] . . . was ineffective and sold in violation of federal and California law." (*Id.* ¶ 101.)  Plaintiff asserts two causes of action for violations of the unfair and unlawful prongs of the California Unfair Competition Law, Cal. Bus. & Profs. Code § 17200, *et seq*. ("UCL").  (*Id.* ¶¶ 111–124.)  Plaintiff seeks restitution ($39), a service award ($4,000), injunctive and declaratory relief, and reasonable attorneys' fees and costs. (*Id.* at 18 (Prayer for Relief).)

**B.**     **<u>Plaintiff Agreed to Amazon's Conditions of Use on Multiple Occasions</u>**

> ***1.***     ***Amazon provides clear and conspicuous notice of the Conditions of Use to Amazon.com customers.***

Amazon (through its affiliates) operates the Amazon.com store where Amazon and third-party sellers offer products for sale to customers. (Lake Decl. ¶ 3.)  All sales in the Amazon.com store are expressly subject to Amazon's COUs. (*Id.* ¶ 4.)

To start, before a customer can purchase products in the Amazon.com store, they must create an individual Amazon.com account. (*Id.* ¶ 6.)  To create an account, the customer must agree to Amazon's COUs. (*Id.*)  Thereafter, each time a customer signs in to their Amazon.com account, they must again accept Amazon's COUs. (*Id.* ¶ 7.)  Specifically, the sign-in page appears as follows:



(*Id.* ¶ 7.)   As shown above, the sign-in page provides a clear notice that "[b]y continuing, you agree to Amazon's Conditions of Use and Privacy Notice." (*Id.* ¶ 8.) It appears in black font against a white background, with the phrase "Conditions of Use" appearing in blue, hyperlinked text that links to the COUs.  The customer must affirmatively click the "Continue" button to sign in. (*Id.*)

Amazon customers also accept Amazon's COUs each time they purchase a product in the Amazon.com store.  (*Id.* ¶ 10.)  For instance, once a customer places a product in their cart, they must proceed to the Amazon.com checkout page and click the "Place your order" button on that page.  (*Id.*)  The "Place your order" button appears as follows:



(*Id.* ¶ 10.)  As shown, at the time that a customer clicks to place an order, they are again conspicuously informed that "[b]y placing your order, you agree to Amazon's privacy notice and conditions of use." (*Id.* ¶ 11.)  This notice, like the many prior notices, appears in black font against a white background with the phrase "conditions of use" appearing in blue, hyperlinked text that links to the COUs.  (*Id.*)  The customer must affirmatively click the "Place your order" button to complete the purchase transaction.  (*Id.*)

### 2.   *Plaintiff accepted the Conditions of Use each time he logged in to Amazon.com and each time he purchased the Product.*

Plaintiff has an account with Amazon.com and, as described above, had to agree to the COUs as part of the account-creation process.  (Lake Decl. ¶ 6.) Similarly, each time Plaintiff logged in to Amazon.com, he would have proceeded

through the log-in process described above and clicked "Continue," by which he again "agree[d] to Amazon's Conditions of Use and Privacy Notice." (*Id.* ¶ 8.)

In addition, Plaintiff accepted the COUs at the point-of-sale every time he completed a purchase on Amazon.com. (*Id.* ¶ 10.) Relevant here, Plaintiff purchased the Product at least five times in 2023—on April 4, April 5, July 27, September 11, and November 10. (*Id.* ¶¶ 13–14.) Plaintiff also purchased it at least twice in 2024, ***after the filing of this action***, on January 25 and March 8. (*Id.*) For each of those purchases, Plaintiff had to affirmatively click the "Place your order" button and, in doing so, he "agreed to Amazon's privacy notice and conditions of use." (*Id.* ¶ 11.)

### C.    <u>Amazon's Conditions of Use Contain an Exclusive Forum-Selection Clause.</u>

The FAC turns on Plaintiff's purchase of the Product in 2023. *See* FAC ¶ 96. Therefore, the most recent iteration of the COUs, which took effect on September 14, 2022, governs. And it expressly provides, under a bolded "**DISPUTES**" heading, that:

> Any dispute or claim relating in any way to your use of any Amazon Service will be adjudicated in the state or Federal courts in King County, Washington, and you consent to exclusive jurisdiction and venue in these courts. We each waive any right to a jury trial.

(Lake Decl. ¶ 16, Ex. A, at 4.[3]) The term "Amazon Service" is defined broadly and includes, among other things, the "products and services" customers use "when [they] visit or shop at Amazon.com." (*Id.*, Ex. A, at 1.)

## III.    STANDARD OF REVIEW

Under 28 U.S.C. § 1404(a), the Court has broad discretion—"[f]or the convenience of parties and witnesses [and] in the interest of justice"—to "transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Where, as here, the Court is asked to enforce a forum-selection clause, "a proper application of § 1404(a)

---

[3] While the September 14, 2022 COUs govern the 2023 purchases that are the subject of the FAC and Plaintiff's more recent 2024 purchases of the Product, the identical forum-selection clause language also appeared in prior iterations of the COUs.

requires that [the] forum-selection clause be given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co.*, 571 U.S. at 59–60 (internal quotation marks omitted).  As such, "[w]hen the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Id.* at 62.

A plaintiff seeking to challenge enforcement of a forum-selection clause bears the heavy burden to establish that "extraordinary circumstances unrelated to the convenience of the parties clearly disfavor a transfer." *Id.* at 52, 64; *see also Lee v. Fisher*, 70 F.4th 1129, 1143 (9th Cir. 2023) ("The plaintiff bears the burden of showing why the court should not transfer the case to the forum identified in the forum-selection clause.").  Plaintiff cannot meet that burden here.

## IV.     ARGUMENT

Pursuant to 28 U.S.C. § 1404(a), the Court should transfer this action to the U.S. District Court for the Western District of Washington because: (1) Plaintiff agreed to the Amazon COUs' exclusive forum-selection clause; (2) the clause plainly applies to this action; and (3) the clause is valid and enforceable.  *See Plumleigh v. Metro. Fine Arts & Antiques Inc.*, No. SACV 14-1721-JLS-JCGX, 2015 WL 13918387, at *3 (C.D. Cal. Jan. 21, 2015) (granting motion to transfer).

### A.     Plaintiff Agreed to the Exclusive Forum-Selection Clause in Amazon's Conditions of Use and He is Bound by that Selection.

The Amazon COUs constitute an enforceable contract between Amazon and Plaintiff.  Amazon provided Plaintiff sufficient notice of the COUs and Plaintiff affirmatively manifested his acceptance of the COUs on multiple occasions.  Plaintiff is therefore bound by the agreed-upon forum-selection clause.

#### 1.     *Online terms of use form binding contracts if the parties have notice of and provide mutual assent to those terms.*

Under traditional contract principles, a contract is formed where the parties have "actual or constructive notice of the agreement" and "manifest mutual assent" to that agreement.  *Oberstein v. Live Nation Ent., Inc.*, 60 F.4th 505, 512–13 (9th Cir.

2023).  As applied to online consumer transactions, the Ninth Circuit has explained that an enforceable agreement exists where: "(1) the website provides reasonably conspicuous notice of the terms to which the consumer will be bound; and (2) the consumer takes some action, such as clicking a button or checking a box, that unambiguously manifests his or her assent to those terms."  *Id.* at 515 (internal quotation marks omitted); *see also Maynez v. Walmart, Inc.*, 479 F. Supp. 3d 890, 896–97 (C.D. Cal. 2020) (finding plaintiff bound by defendant's arbitration agreement after she placed an order through Walmart's digital app).

With respect to the first prong, reasonably conspicuous notice exists where notice of the applicable terms and conditions is "displayed in a font size and format such that the court can fairly assume that a reasonably prudent Internet user would have seen it."  *Oberstein*, 60 F.4th at 515 (internal quotation marks omitted).  Courts will typically consider "the conspicuousness and placement of the 'Terms of Use' hyperlink," as well as "other notices" provided to the customer and "the website's general design."  *Id.* (internal quotation marks omitted).  In *Oberstein*, for example, the Ninth Circuit found that the defendants' website provided reasonably conspicuous notice where: (1) customers were required to click on a "confirmation button above which text inform[ed] the user that, by clicking on this button, 'you agree to our Terms of Use'" at three separate stages—"when creating an account, signing into an account, and completing a purchase;" (2) the "Terms of Use" hyperlink at each stage was set forth "in bright blue font" and distinguished from the surrounding text; and (3) the "Terms of Use" hyperlink transferred the customer to the text of the Terms of Use.  *Id.* at 515–16; *see also Maynez*, 479 F. Supp. 3d at 893, 897 (finding conspicuous notice where the "Place Order" button included a bolded, underlined hyperlink for "Terms of Use"); *Peter v. DoorDash, Inc.*, 445 F. Supp. 3d 580, 586–87 (N.D. Cal. 2020) (finding plaintiff bound to online terms where sign-in page contained two hyperlinks, in blue font, located close to the "sign-up button").

The second prong is even more straightforward. "[A]n unambiguous manifestation of assent" exists where the customer is required to affirmatively click a button and "is explicitly advised that the act of clicking will constitute assent to the terms and conditions of an agreement." *Oberstein*, 60 F.4th at 515–16 (internal quotation marks omitted); *see also Skelton v. Care.com, Inc.*, No. 3:20-cv-02086-AJB-DEB, 2021 WL 5862447, at *5 (S.D. Cal. Aug. 17, 2021) (finding assent where "Plaintiff necessarily had to have clicked the 'Join Now' button" to complete "the sign-up process and register for an account"); *Maynez*, 479 F. Supp. 3d at 897 (finding assent where "[t]he Walmart app required Plaintiff to affirmatively acknowledge and agree to the Terms of Use when she placed an Order.").

In short, as this Court has explained, "a modified or hybrid clickwrap/browsewrap agreement constitutes a binding contract where the user is provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the 'I Accept' button and clicks that button." *Crawford v. Beachbody, LLC*, No. 14-cv-1583-GPC(KSC), 2014 WL 6606563, at *3 (S.D. Cal. Nov. 5, 2014) (Curiel, J.). This conclusion holds even where the plaintiff did not actually read the agreement. *See Maynez*, 479 F. Supp. 3d at 898 ("Whether or not Plaintiff actually saw, reviewed or read the [online Conditions] of Use is not relevant to the question of whether she agreed to them."); *Moretti v. Hertz Corp.*, No. C 13-02972 JSW, 2014 WL 1410432, at *2 (N.D. Cal. Apr. 11, 2014) (forum-selection clauses are "enforceable even though the [party] did not actually read it as long as the clause provided adequate notice to the defendant that he was agreeing to the jurisdiction cited in the contract." (alteration in original) (internal quotation marks omitted)).

### 2. The Amazon COUs meet the criteria for enforceability of online terms of use.

Under these principles, the Amazon COUs are a valid and legally binding contract between Plaintiff and Amazon.

First, Amazon provided Plaintiff with "reasonably conspicuous notice" of the COUs each time he signed in to his Amazon.com account and each time he purchased the Product (or any other product) from Amazon.com.  (*See* Lake Decl. ¶¶ 7–8, 10–11.)  To sign in to his account, Plaintiff had to click a "Continue" button that was immediately above a notice stating that: "[b]y continuing, you agree to Amazon's Conditions of Use and Privacy Notice." (*Id*. ¶ 8.)  And upon each purchase, Plaintiff had to click the "Place your order" button that was adjacent to a further notice stating that: "[b]y placing your order, you agree to Amazon's privacy notice and conditions of use." (*Id.* ¶ 11.)  Both notices were set out in black font on a white background, with the words "conditions of use" distinguished by blue text, with a hyperlink to the COUs.  (*Id.* ¶¶ 8, 11.)

As noted above, Plaintiff purchased the Product at least five times in 2023, and at least twice in 2024.  As a result, Plaintiff had clear notice of the COUs—and the Washington-exclusive forum-selection clause therein—at least seven separate times (fourteen times if he signed into his account for each such purchase).  Based on these facts, Plaintiff cannot dispute that he had reasonably conspicuous notice of the COUs. *See Oberstein*, 60 F.4th at 515–16 (enforcing arbitration agreement contained in online terms and conditions); *Skelton*, 2021 WL 5862447, at \*5 (finding reasonable notice where "Defendant displayed conspicuously the hyperlinked 'Terms of Use' in a different color from the rest of the text" and "[t]he Terms of Use [were] also placed immediately above the 'Join Now' button"); *Crawford*, 2014 WL 6606563, at \*3 (similar; granting motion to transfer).

Second, Plaintiff manifested his mutual assent to accept the COUs each time that he affirmatively chose to click on the "Continue" button to log in to his account and each time that he affirmatively chose to click the "Place your order" button and buy the Product (at least seven separate times in 2023 and 2024).  (*See* Lake Decl. at ¶¶ 13–14.)  As noted above, the "Continue" and "Place your order" buttons are each accompanied by conspicuous notices advising Plaintiff that, by clicking those buttons

and continuing with a log-in or purchase, he "agree[d] to Amazon's Conditions of Use and Privacy Notice." (*Id.* at ¶ 8, 11.) Therefore, by clicking those buttons, Plaintiff indicated his mutual assent to the terms of the COUs. *See Oberstein*, 60 F.4th at 515–16; *Crawford*, 2014 WL 6606563, at * 3 (finding that plaintiff "agreed to Terms and Conditions of Use, including the forum selection clause" by clicking the "PLACE ORDER" button, under which it was stated that: 'By clicking Place Order below, you are agreeing that you have read and understand the [terms and conditions].'").

Finally, numerous district courts in the Ninth Circuit have held that the Amazon.com website provides reasonable notice of the COUs to its customers and, as a result, that the COUs constitute a binding agreement between Amazon and its customers. *See, e.g., Li v. Amazon.com Services LLC*, No. 23-cv-00441-AMO, 2023 WL 8720669, at *6 (N.D. Cal. Dec. 18, 2023) ("Courts have repeatedly held that Amazon's layout of its checkout page provides constructive notice to its users of the [COUs]." (internal quotation marks omitted)); *Heinz v. Amazon.com, Inc.*, No. 2:23-cv-00282 WBS AC, 2023 WL 4466904, at *2 (E.D. Cal. July 11, 2023) ("Multiple district courts have not only found similar Conditions to be enforceable but have also found reasonable the specific Conditions [of Use] imposed by [Amazon]."); *Greenberg v. Amazon.com, Inc.*, No. 20-CV-02782-JSW, 2021 WL 7448530, at *6 (N.D. Cal. May 7, 2021) ("[T]he Court concludes Plaintiffs received constructive notice of the [COUs] and assented to its terms by clicking the 'Place Your Order' button when they purchased their items."); *see also Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 863 (9th Cir. 2017) ("The Conditions of Use (COU) created a valid contract between Amazon and its customers[.]").[4] District courts outside the Ninth Circuit have similarly held that the COUs create binding contracts with Amazon

---

[4] *See also Ekin v. Amazon Servs., LLC*, 84 F. Supp. 3d 1172, 1173–78 (W.D. Wash. 2014) (finding plaintiff affirmatively assented to Amazon COUs and enforcing arbitration agreement in then-in-effect version of the COUs); *McKee v. Audible, Inc.*, No. CV 17-1941-GW(EX), 2017 WL 4685039, at *11 n.7 (C.D. Cal. July 17, 2017) (enforcing arbitration agreement in then-in-effect Amazon COUs).

customers.  *See*, *e.g.*, *Adams v. Amazon.com, Inc.*, No. 7:23-cv-00121-EKD, 2023 WL 4002534, at *1 (W.D. Va. Jun. 14, 2023) (granting motion to transfer to the Western District of Washington because "by clicking on the continue button [to log in to Amazon.com], plaintiff agreed to Amazon's Conditions of Use"); *Rosskamm v. Amazon.com, Inc.*, 637 F. Supp. 3d 500, 510 (N.D. Ohio. 2022) (granting motion to transfer to the Western District of Washington and concluding "that the COUs at issue here are sufficiently conspicuous and accessible, and thus deemed enforceable").[5]

The Court should follow the overwhelming weight of authority and find that the COUs, including the forum-selection clause, constitute an enforceable contract between Amazon and Plaintiff.

### B.    The Forum-Selection Clause Applies to this Dispute.

The forum-selection clause in Amazon's COUs requires transfer of "[a]ny dispute or claim ***relating in any way*** to your use of any Amazon Service . . . ." (Lake Decl. at Ex. A at 4 (emphasis added).)  The term "Amazon Services" includes any "website features and other products or services [provided] to you when you visit or shop at Amazon.com, use Amazon products or services use Amazon application for mobile, or use software provided by Amazon in connection with any of the foregoing." (*Id.* at 1.)  Plaintiff's claims in this action expressly and directly "relate" to his purchases of the Product from Amazon.com (*see* FAC ¶¶ 96–103), which is plainly a "use of an[] Amazon Service."   Accordingly, the present dispute unequivocally falls within the scope of the forum-selection clause.

The Ninth Circuit interprets "relating to" as used in forum-selection clauses to broadly encompass "any disputes that reference the agreement or have some logical

---

[5] *See also Wilcosky v. Amazon.com, Inc.*, 517 F.Supp.3d 751, 764–65 (N.D. Ill. 2021) (holding plaintiffs agreed to Amazon's COUs after creating an Amazon.com account and purchasing products from the Amazon.com store); *Payne v. Amazon.com, Inc.*, No. 2:17-CV-2313-PMD, 2018 WL 4489275, at *5 (D. S.C. July 25, 2018) (finding plaintiff "had  notice of the Conditions of Use and manifested his assent to them by clicking the 'Place your order' button").

or causal connection to the agreement." *Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018) (internal quotation marks omitted). Moreover, it is well-established that use of the phrase "relating to" "indicate[s] that the scope of the clause is subject to broader interpretation," and applies to statutory, tort, and other non-contractual claims. *Joseph v. Amazon.Com, Inc.*, No. C12-06256 HRL, 2013 WL 4806462, at *4 (N.D. Cal. Sept. 9, 2013) (finding Amazon's then-in-effect forum-selection clause, which included "relating to" language, encompassed "any dispute relating in any way to the agreements or to plaintiff's use of the program services").

Applying these principles to online terms and conditions, courts regularly find that forum-selection clauses using the phrase "related to" apply to tort and consumer-protection claims based on a plaintiff's purchases from a defendant's website. *See Moretti*, 2014 WL 1410432, at *3 (finding forum-selection clause in online terms and conditions applied to false advertising claims that arose out of and related to plaintiff's booking of a rental car through defendant's website); *Crawford*, 2014 WL 6606563, at *2–3, *6–7 (finding terms and conditions on defendant's website applied to dispute involving purchases made on defendant's website); *Kabbash v. Jewelry Channel, Inc. USA*, No. CV 15-4007 DMG (MRWx), 2016 WL 9132930, at *5 (C.D. Cal. Feb. 22, 2016) (holding forum-selection clause in online terms and conditions applied to tort claims for fraud, misrepresentation, and violation of California state consumer protection laws relating to "a customer's use of defendant's web site").

Because Plaintiff's claims relate to and arise out of his use of the Amazon.com store to purchase the Product, the exclusive forum-selection clause in Amazon's COUs applies to Plaintiff's claims. *See Rosskamm*, 637 F. Supp. 3d at 508–09 (finding the Amazon COUs, and the forum-selection clause therein, applicable to all claims regarding plaintiffs' alleged purchases from Amazon.com because such claims relate to plaintiffs' "use of an Amazon Service").

MEMORANDUM IN SUPPORT OF
AMAZON'S MOTION TO TRANSFER
CASE NO. 3:24-CV-0546-GPC-BLM

### C.   The Forum-Selection Clause Is Enforceable.

The U.S. Supreme Court mandates that valid forum-selection clauses "should be given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co.*, 571 U.S. at 63 (cleaned up; internal quotation marks omitted).  Courts, therefore, must grant Section 1404(a) motions to transfer pursuant to forum-selection clauses, except in rare cases with "extraordinary circumstances unrelated to the convenience of the parties." *Id.* at 62; *see also Heinz*, 2023 WL 4466904, at *2 ("Forum selection clauses are presumptively valid and should be honored absent some compelling and countervailing reason." (internal quotation marks omitted)); *Rochfort v. EF Instit. for Cultural Exch., Inc.*, No. 3:20-cv-00508-GPC-BLM, 2020 WL 12833951, at *7 (S.D. Cal. Sept. 8, 2020) (Curiel, J.) ("Forum selection clauses are presumptively valid.").

Plaintiff bears the "heavy burden of showing the sort of exceptional circumstances that would justify disregarding a forum-selection clause." *Sun*, 901 F.3d at 1084; *see also Atl. Marine Const. Co.*, 571 U.S. at 63 ("[A]s the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted.").  To satisfy this "heavy burden," Plaintiff must make "a strong showing" that: (1) fraud or overreaching invalidates the forum-selection clause, (2) strong public policy of the suit's forum contravenes enforcement, or (3) "'trial in the contractual forum will be so gravely difficult and inconvenient that [the litigant] will for all practical purposes be deprived of his day in court.'"  *Sun*, 901 F.3d at 1088 (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 15 (1972)) (alteration in original).  Plaintiff cannot satisfy this burden.

#### 1.   Plaintiff cannot prove that the forum-selection clause is the product of fraud or overreaching.

To establish fraud or overreaching sufficient to defeat a motion to transfer, Plaintiff must prove that the forum-selection clause *itself* is the product of fraud, overreaching, or coercion by Amazon.  *See Sun*, 901 F.3d at 1088 (requiring "that

the forum-selection clause in [the] agreement[] is the product of fraud or overreaching" to avoid enforcement of that clause); *Plumleigh*, 2015 WL 13918387, at *5 ("To establish the invalidity of a forum selection clause on the basis of fraud or overreaching, the party resisting enforcement must show that the *inclusion of that clause in the contract* was the product of fraud or coercion." (emphasis in original; internal quotation marks omitted)).

Neither a lack of direct negotiations nor unequal bargaining power will render a forum selection clause unenforceable. *See Carnival Cruise Lines v. Shute*, 499 U.S. 585, 596 (1991) (finding forum-selection clauses included in non-negotiated contracts are enforceable even if there is unequal bargaining power between parties); *Heinz*, 2023 WL 4466904, at *3 (explaining that "California courts enforce forum selection clauses within an adhesion contract as long as the clause provides adequate notice" (cleaned up; internal quotation marks omitted)); *Crawford*, 2014 WL 6606563, at *5 (holding argument that the relevant terms and conditions were "not negotiable" did not "rebut the presumption in favor of the forum selection clause"). Similarly, "generalized contentions" that Plaintiff did not read the forum-selection clause or the COUs "are insufficient to establish unreasonableness in a forum selection clause." *Skelton*, 2021 WL 5862447, at *7 (citing *Carnival Cruise Lines, Inc.*, 499 U.S. at 593–94).

Here, Plaintiff, like all Amazon customers, voluntarily and affirmatively accepted Amazon's COUs each time he signed in to his Amazon.com account and each time he made a purchase from Amazon.com. (*See* §§ II.B & IV.A, *supra.*) And, as numerous courts have held, Amazon customers, like Plaintiff, are provided with sufficiently conspicuous notice to form a binding contract. (*See* § IV.A.2, *supra.* (citing cases).) The forum-selection clause, moreover, is set forth in the COUs in a stand-alone section, under a bolded, capitalized heading that reads "**DISPUTES**," and consists of a single straightforward and easy-to-understand sentence. (*See* Lake

Decl. at ¶ 16, Ex. A, at 4.)  Simply put, Plaintiff will not be able to establish that the forum-selection clause is the product of fraud or overreaching.

### 2. Transfer to the Western District of Washington would not violate any strong public policy of the State of California.

Plaintiff is equally unable to demonstrate that enforcing the forum-selection clause and transferring this case to the Western District of Washington "would contravene a strong public policy" of California.  *Sun*, 901 F.3d at 1088 (internal quotation marks omitted).  Indeed, to override "the strong federal policy in favor of enforcing forum-selection clauses," Plaintiff "must point to a statute or judicial decision that clearly states such a strong public policy."  *Id.* at 1090.  No such statute or judicial decision exists that would warrant such extraordinary relief.  Plaintiff, therefore, cannot establish any public policy basis on which to contest enforcement of the forum-selection clause.

### 3. Plaintiff cannot establish that the transfer of this action would effectively deprive him of his day in court.

Plaintiff also cannot show that litigating this action in the Western District of Washington would be "so gravely difficult and inconvenient" as to effectively deprive him of his day in court.  This exception "is difficult to satisfy."  *Sun*, 901 F.3d at 1091.  That is because, by agreeing to the COUs and the forum-selection clause, Plaintiff "waive[d] the right to challenge the preselected forum as inconvenient or less convenient for [himself] or [his] witnesses, or for [his] pursuit of the litigation."  *Atl. Marine Const. Co.*, 571 U.S. at 64.  Accordingly, the Court must afford "no weight" to Plaintiff's choice of forum and "must deem the private-interest factors to weigh entirely in favor of the preselected forum."  *Id.* at 63–64.

The Ninth Circuit has applied this exception very narrowly, holding that "courts must enforce a forum-selection clause unless the contractually selected forum affords the plaintiffs *no remedies whatsoever*."  *Sun*, 901 F.3d at 1092 (emphasis added).  Courts, therefore, must transfer an action to the contractually chosen forum even if that forum provides for "less effective remedies" or renders "certain types of

MEMORANDUM IN SUPPORT OF
AMAZON'S MOTION TO TRANSFER
CASE NO. 3:24-CV-0546-GPC-BLM

remedies" unavailable. *Id.* (internal quotation marks omitted).  What matters is that the transferee forum provides "a basically fair court system . . . that would allow the plaintiff to seek some relief." *Id.* (internal quotation marks omitted).

Here, the Western District of Washington provides Plaintiff with a fair and efficient forum in which to pursue his claims and, if he succeeds on those claims, affords him the ability to recover appropriate relief—whether his claims are ultimately governed by California or Washington substantive law.[6]  Indeed, courts have enforced Amazon's forum-selection clause on these very grounds.  *See Heinz*, 2023 WL 4466904, at *5 (finding Amazon's forum-selection clause enforceable because "Washington law does not make all remedies unavailable" to plaintiff); *Schumacher v. Amazon.com LLC*, No. SACV 11-01906-CJC-JPRX, 2012 WL 13036856, at *4 (C.D. Cal. May 29, 2012) (enforcing Amazon forum-selection clause because plaintiff "may assert identical claims in Washington while arguing for the application of California law" and he "has made no showing that Washington law, assuming it did apply to [his] claims, does not provide the same or equivalent remedies as are available under California law").

Plaintiff, therefore, cannot show that transfer would deprive him of his day in court.  *See Sun* 901 F.3d at 1091–92 ("Given that the [plaintiffs] retain remedies under Washington securities law, California securities law, and California common law, they have not carried their heavy burden to show that enforcement of the forum-selection clause would deprive them of their day in court.").

---

[6] The COUs contain a choice-of-law provision that requires the application of Washington state law to this dispute.  (*See* Lake Decl. at Ex. A, at 4.)  As this Court has explained, a choice-of-law provision is separate from a forum-selection clause and courts "have generally agreed that the choice-of-law analysis is irrelevant to determining if the enforcement of a forum selection clause contravenes a strong public policy." *Rochfort*, 2020 WL 12833951, at *7 (citing cases) (quotation marks omitted).  Amazon addresses the impact of this choice-of-law provision in its contemporaneously filed Motion to Dismiss Plaintiff's FAC.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 4. *Transfer is appropriate under the public-interest factors of Section 1404(a).*

In evaluating a Section 1404(a) motion to transfer pursuant to a valid forum-selection clause, the Court is limited to considering only the so-called "public-interest factors."[7] *Atl. Marine Const. Co.*, 571 U.S. at 64. The public interest factors include: (1) "the administrative difficulties flowing from court congestion;" (2) "the local interest in having localized controversies decided at home;" and (3) "the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 62 n.6. The Supreme Court has instructed that the public-interest factors "will rarely defeat a transfer motion" (*id.* at 64), and that the plaintiff "bear[s] the burden of showing that [these] factors overwhelmingly disfavor a transfer" (*id.* at 67). Plaintiff cannot satisfy this stringent burden.

First, Amazon is unaware of any concrete "administrative difficulties" that may result from "court congestion" in either this Court or the Western District of Washington. This factor, therefore, does not weigh against or for transfer.

Second, California's interest in this action is no greater than the interest of Washington. Amazon is not a California corporation. It is incorporated in Delaware with its principal place of business in Washington. As such, "'California has little interest in keeping the litigation in this state to deter future wrongful conduct.'" *Lightfoot v. MoneyonMobile, Inc.*, No. 18-cv-07123-YGR, 2019 WL 2476624, at *9 (N.D. Cal. Jun. 13, 2019) (quoting *Moretti*, 2014 WL 1410432, at *5). And Washington's "interest in deterring wrongful conduct by its own citizens is at least as great as, if not greater than, California's interest in adjudicating claims against out-of-state defendants in its courts." *Id.*

Third, this Court's familiarity with California law does not "overwhelmingly" weigh against transfer. Amazon's COUs contain a choice-of-law clause, which requires the application of Washington law to this dispute. *See* Note 6, *supra.* Thus,

---

[7] This is because the Court "must deem the private-interest factors to weigh entirely in favor of the preselected forum." *Atlantic Marine Const. Co.*, 571 U.S. at 63–64.

MEMORANDUM IN SUPPORT OF
AMAZON'S MOTION TO TRANSFER
CASE NO. 3:24-CV-0546-GPC-BLM

as the Eastern District of California recently held in *Heinz*, "the Western District of Washington would be more familiar with the governing law." *Heinz*, 2023 WL 4466904, at *5; *see also Rosskamm*, 637 F. Supp. 3d at 513 (finding public interest factors favor Washington as the appropriate forum, in part, "because the [Amazon] COUs contains a choice of law clause wherein the parties agreed Washington law would govern disputes"). And even if Washington substantive law did not (or is found not to) apply, the Western District of Washington, like most federal courts, "could competently apply California law." *Lightfoot*, 2019 WL 2476624, at *8; *see also Atl. Marine Const. Co.*, 571 U.S. at 67 ("[F]ederal judges routinely apply the law of a State other than the State in which they sit.").

Finally, Section 1404(a) empowers district courts to transfer a case "to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Amazon has its principal place of business in Seattle, Washington (Lake Decl. ¶ 17), and thus the Western District of Washington has personal jurisdiction over Amazon. *See Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (explaining that a corporation is subject to personal jurisdiction in the forum where it has its principal place of business). In addition, because the forum-selection clause contained in Amazon's COUs forms a valid, binding agreement, Plaintiff has consented to adjudication of his claims in the Western District of Washington. Accordingly, the Western District of Washington is an appropriate venue to which to transfer the present action.

## V.    CONCLUSION

For the foregoing reasons, Amazon respectfully requests that the Court transfer this action to the U.S. District Court for the Western District of Washington.

MEMORANDUM IN SUPPORT OF
AMAZON'S MOTION TO TRANSFER
CASE NO. 3:24-CV-0546-GPC-BLM

1    Dated:   April 26, 2024       K&L GATES LLP

2

3                              By: s/ Kevin S. Asfour

4                                 Kevin S. Asfour
                                Jennifer J. Nagle

5                                 Robert W. Sparkes, III
                                Loly G. Tor

6                                 Marvis A, Barnes II

7                                 *Attorneys for Defendant*
                                *Amazon.com, Inc.*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28