**STEPTOE LLP**
Carol Brophy CA Bar No.: 155767
One Market Plaza
Steuart Tower, 10th Floor, Suite 1070
San Francisco, CA 94105
Tel: (415) 365 6700
cbrophy@steptoe.com

Anthony Hopp (*Pro Hac Vice Forthcoming*)
227 West Monroe Street, Suite 4700
Chicago, IL 60606
Tel: (312) 577 1300
ahopp@steptoe.com

*Attorneys for Defendants*
*NUTRA HOLDINGS, INC. and*
*NUTRA HOLDINGS TWO, INC.*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SAN DIEGO DIVISION

| | |
|---|---|
| RUSSELL STEPHEN,<br><br>Plaintiff,<br><br><br>NUTRA HOLDINGS, INC.,<br>NUTRA HOLDINGS TWO, INC.,<br>AMAZON, INC., and JOHN<br>WILLIAMS,<br><br>Defendants. | Case No. 3:24-cv-00546-MLH-BLM<br><br>**DEFENDANTS NUTRA HOLDINGS,<br>INC. AND NUTRA HOLDINGS TWO,<br>INC.'S ANSWER AND AFFIRMATIVE<br>DEFENSES TO PLAINTIFF'S<br>FIRST AMENDED COMPLAINT** |

## DEFENDANTS NUTRA HOLDINGS, INC. AND NUTRA HOLDINGS TWO, INC.'S ANSWER TO FIRST AMENDED COMPLAINT

Defendants Nutra Holdings, Inc. and Nutra Holdings Two, Inc. (collectively, "Nutra Holdings") hereby answer the First Amended Complaint ("FAC") filed by Plaintiff Russell Stephen's ("Plaintiff") as follows:

### I.     JURISDICTION AND VENUE

1.     Jurisdiction is proper because Plaintiff is a citizen of California and because all claims are asserted under the laws of California and relate to a product that is sold in California and was purchased by Plaintiff in California.

**ANSWER:**

**Paragraph 1 sets forth legal conclusions to which no response is required. To the extent that a response is required, Nutra Holdings states that it is without knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations with respect to his citizenship. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions contained in Paragraph 1 of the FAC.**

2.     Venue is proper under Bus. & Prof. Code 17203 because Defendants conduct continuous business in San Diego County and sold hundreds or thousands of the product at issue in this county.

**ANSWER:**

**Paragraph 2 sets forth legal conclusions to which no response is required. To the extent that a response is required, Nutra Holdings denies the allegations, innuendo, and legal conclusions contained in Paragraph 2 of the FAC.**

### II.     NATURE OF THE ACTION

3.     Defendant John Williams is an individual and the founder and CEO of Nutra Holdings, Inc. and Nutra Holdings Two, Inc. (collectively "Nutra Holdings").

**ANSWER:**

**Nutra Holdings admits that John Williams is the founder and current CEO of Nutra Holdings.  Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions contained in Paragraph 3 of the FAC.**

4.      At Defendant William's direction, Nutra Holdings manufactures, distributes, and sells a suite of unapproved new drugs under the "Jacked Factory" brand name, including Androsurge.

**ANSWER:**

**Nutra Holdings admits that it manufactures, distributes and sells certain supplements under the brand name "Jacked Factory", including Androsurge Estrogen Blocker & Test Booster\* ("Androsurge product"). Nutra Holdings denies that the Androsurge product is an unapproved drug. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions contained in Paragraph 4 of the FAC.**

5.      Williams "oversees everything from marketing to product development."[1]  He ordered, authorized, and approved the advertising and sale of Androsurge.

**ANSWER:**

**Nutra Holdings admits that the webpage—https://nutraholdings.com/about/ — currently states the following: "John leads the overall strategy for Nutra and oversees everything from marketing to product development and acquisitions." Nutra Holdings denies paragraph 5 to the extent that it mischaracterizes the content of the webpage. The webpage speaks for itself. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions set forth in Paragraph 5 of the FAC.**

6.      At Defendant William's direction, Nutra Holdings markets Androsurge as a purported estrogen blocking and testosterone boosting supplement with claims that suggest the product can deliver benefits akin to those which prescription drugs would provide.

**ANSWER:**

---

[1] https://nutraholdings.com/team/john-williams/

**Nutra Holdings admits that it manufactures, distributes and sells certain supplements under the brand name "Jacked Factory", including Androsurge Estrogen Blocker & Test Booster\*. The front label of the Androsurge Product includes the following statements: "Block Estrogen\*"; "Harden Physique\*"; "Test Booster\*"; "Aromatase Inhibitor\*".  The asterisk leads to the FDA mandated disclosure: "\*Statements regarding dietary supplements have not been evaluated by the FDA and are not intended to diagnose, treat, cure, or prevent any disease or health condition." Nutra Holdings denies that the Androsurge product is an unapproved drug and denies the remaining allegations, innuendo, and legal conclusions contained in Paragraph 6 of the FAC.**

7.      These claims are contrary to those allowed by the Food, Drug, and Cosmetic Act, 21 U.S.C. § 301 et seq. ("FDCA"), and subject any individual manufacturing or selling it to liability for the sale of an unapproved new drug.

**ANSWER:**

**Nutra Holdings denies the allegations, innuendo, and legal conclusions contained in Paragraph 7 of the FAC.**

8.      Nutra Holdings' representations mislead consumers into believing that Androsurge is safe and effective for its intended purposes.

**ANSWER:**

**Nutra Holdings denies the allegations, innuendo, and legal conclusions contained in Paragraph 8 of the FAC.**

9.      At all relevant times, Defendant Williams has aided and abetted the manufacturing, marketing, distribution, and sale of Androsurge.

**ANSWER:**

**Nutra Holdings denies the allegations, innuendo, and legal conclusions contained in Paragraph 9 of the FAC.**

10.     Defendant Amazon markets and sells Androsurge, an unapproved drug, online. Amazon sells Androsurge to consumers throughout California and the United States.

**ANSWER:**

**This allegation is not directed at Nutra Holdings, therefore, no response is required. To the extent that a response is required, Nutra Holdings denies that the Androsurge product is an unapproved drug. Nutra Holdings admits that consumers may purchase the Androsurge product online at amazon.com. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions contained in Paragraph 10 of the FAC.**

11.     At all relevant times, Defendant Amazon has aided and abetted the marketing, distribution, and sale of Androsurge.

**ANSWER:**

**This allegation is not directed at Nutra Holdings, therefore, no response is required. To the extent that a response is required, Nutra Holdings denies that the Androsurge product is an unapproved drug. Nutra Holdings admits that consumers may purchase the Androsurge product online at amazon.com. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions contained in Paragraph 11 of the FAC.**

12.     Plaintiff Russell Stephen purchased and used Androsurge in reliance upon Defendants' deceptive and unlawful "drug" claims, and with the belief that the product was sold in compliance with state and federal regulations.

**ANSWER:**

**Nutra Holdings denies that the Androsurge product makes any deceptive and unlawful "drug" claims. Nutra Holdings further states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 12 regarding Plaintiff's purported purchase of the Androsurge product, and therefore denies the same. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions contained in Paragraph 12 of the FAC.**

13.     Plaintiff used Androsurge as directed, but the product failed to deliver the advertised benefits, nor any results at all.

**ANSWER:**

**Nutra Holdings states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 13 regarding Plaintiff's purported purchase and use of the Androsurge product, and therefore denies the same. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions contained in Paragraph 13 of the FAC.**

14.     Defendants promote Androsurge as capable of providing benefits akin to those prescription drugs would provide, when in truth, Androsurge cannot deliver the advertised benefits.

**ANSWER:**

**Nutra Holdings denies the allegations, innuendo, and legal conclusions contained in Paragraph 14 of the FAC.**

15.     This action is brought to remedy Defendants' unfair and unlawful conduct. Plaintiff seeks an order compelling Defendants to, inter alia: (l) cease their illegal marketing and sale of Androsurge as an unapproved new drug; (2) conduct a corrective advertising campaign; (3) destroy all unlawful products and labeling; (4) award Plaintiff restitution and service awards; and (5) pay costs, expenses, and attorney fees.

**ANSWER:**

**Nutra Holdings denies that Plaintiff is entitled to any relief, including equitable relief and denies the remaining allegations, innuendo, and legal conclusions contained in Paragraph 15 of the FAC.**

### III.     PARTIES

16.     Defendant Nutra Holdings, Inc. is a Delaware corporation headquartered in St. John's, Newfoundland.

**ANSWER:**

1

2

**Nutra Holdings, Inc. denies that it is a Delaware corporation. Nutra Holdings Inc is a Canadian Corporation headquartered in St. John's, Newfoundland.**

3

4

17.     Defendant Nutra Holdings Two, Inc. is a Delaware corporation headquartered in St. John's, Newfoundland.

5

**ANSWER:**

6

7

**Nutra Holdings Two, Inc. admits that it is a Delaware corporation and its headquarters is in St. John's, Newfoundland.**

8

9

18.     Nutra Holdings owns, manufactures, distributes, and sells a suite of unapproved drugs, including Androsurge, under the "Jacked Factory" brand name.

10

**ANSWER:**

11

12

13

14

15

**Nutra Holdings admits that it manufactures, distributes and sells certain supplements under the brand name "Jacked Factory", including Androsurge Estrogen Blocker & Test Booster*. Nutra Holdings denies that the Androsurge product is an unapproved drug. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions contained in Paragraph 18 of the FAC.**

16

17

19.     Nutra Holdings sells "Jacked Factory" products, including Androsurge, throughout California and the United States.

18

**ANSWER:**

19

20

21

22

**Nutra Holdings admits that it manufactures, distributes and sells certain supplements under the brand name "Jacked Factory", including Androsurge Estrogen Blocker & Test Booster*.  Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions contained in Paragraph 19 of the FAC.**

23

20.     Defendant John Williams is the founder and CEO of Nutra Holdings.

24

**ANSWER:**

25

26

27

**Nutra Holdings admits that John Williams is the founder and current CEO of Nutra Holdings.  Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions contained in Paragraph 20 of the FAC.**

28

21. Williams ordered, authorized, and participated in the long-term, fraudulent advertising scheme complained of herein.

**ANSWER:**

**Nutra Holdings denies the allegations, innuendo, and legal conclusions contained in Paragraph 21 of the FAC.**

22. Williams ordered, authorized, and participated in the unlawful labeling and sale of Androsurge complained of herein.

**ANSWER:**

**Nutra Holdings denies the allegations, innuendo, and legal conclusions contained in Paragraph 22 of the FAC.**

23. Defendant Amazon, Inc. is a Delaware corporation with its principal place of business in Seattle, WA.

**ANSWER:**

**This allegation is not directed at Nutra Holdings, therefore, no response is required. To the extent that a response is required, Nutra Holdings states that it is without knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations regarding Amazon, and therefore denies the allegations, innuendo, and legal conclusions contained in Paragraph 23 of the FAC.**

24. Amazon markets and sells Androsurge online to customers throughout California and the United States.

**ANSWER:**

**This allegation is not directed at Nutra Holdings, therefore, no response is required. To the extent that a response is required, Nutra Holdings admits that consumers may purchase the Androsurge product online at amazon.com. Nutra Holdings denies that the Androsurge product is an unapproved drug and denies the remaining allegations, innuendo, and legal conclusions contained in Paragraph 24 of the FAC.**

25.     At all relevant times, Defendant Amazon has aided and abetted the marketing, distribution, and sale of Androsurge.

**ANSWER:**

**This allegation is not directed at Nutra Holdings, therefore, no response is required. To the extent that a response is required, Nutra Holdings admits that consumers may purchase the Androsurge product online at amazon.com. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions contained in Paragraph 25 of the FAC.**

26.     Plaintiff Russell Stephen is a citizen of California who purchased Androsurge for personal consumption.

**ANSWER:**

**Nutra Holdings is without knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations with respect to his citizenship. To the extent that a response is required, Nutra Holdings denies the allegations, innuendo, and legal conclusions contained in Paragraph 26 of the FAC.**

## IV.     RELEVANT BACKGROUND INFORMATION

27.     The

Dietary Supplement Health and Education Act (DSHEA) of 1994, which amended the Federal Food, Drug, and Cosmetic Act, transformed FDA's authority to regulate dietary supplements. Under DSHEA, FDA is not authorized to approve dietary supplements for safety and effectiveness before they are marketed. In fact, in many cases, firms can lawfully introduce dietary supplements to the market without even notifying FDA. Since DSHEA was enacted, the dietary supplement market has grown significantly. For example, the number of products has expanded nearly twenty times since 1994.[2]

**ANSWER:**

_____

[2]          https://www.fda.gov/food/dietary-supplements/information-consumers-using-dietary-supplements

ANSWER AND AFFIRMATIVE DEFENSES
*Stephen v. Nutra Holdings, Inc., et al.*, Case No. 3:24-cv-00546-MLH-BLM

**The allegations of Paragraph 27 of the FAC consist of legal conclusions to which no response is required. To the extent that a response is required, Nutra Holdings states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 27 that purport to characterize certain statements allegedly made on an FDA website, and therefore denies the same. Nutra Holdings denies paragraph 27 to the extent that it mischaracterizes the content of the website. The alleged website speaks for itself. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions set forth in Paragraph 27 of the FAC.**

28.     A January 2020 evaluation of 'Testosterone Boosting' supplements, published by the National Library of Medicine found that

> [a]pproximately 50% of American adults consume dietary supplements to promote overall health and fill dietary gaps [4,5]. These over the counter "T boosters" are often taken with the hopes of raising endogenous [testosterone] production and doing this in a more "natural" manner.[3]

**ANSWER:**

**Nutra Holdings states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 28 that purport to characterize certain statements from an article allegedly published in the World Journal of Men's Health, and therefore denies the same. Nutra Holdings denies paragraph 28 to the extent that it mischaracterizes the content of the publication. The alleged publication speaks for itself. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions set forth in Paragraph 28 of the FAC.**

29.     Further the same study found 10.1% of supplements "contained components with data suggesting a negative effect" on testosterone and insisted that "[p]atients should be informed that 'T booster' supplements may not have ingredients to support their claims." *Id.*

---

[3] Glemesha, Chase (2020)*'Testosterone Boosting' Supplements Composition and Claims Are Not Supported by the Academic Literature;* WORLD J MENS HEALTH 2020 Jan 38(1): 115-122. *Available at* https://www.ncbi.nlm.nih.gov/pmc/articles/PMC6920068/.

**ANSWER:**

**Nutra Holdings states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 29 that purport to characterize certain statements from an article allegedly published in the World Journal of Men's Health, and therefore denies the same. Nutra Holdings denies paragraph 29 to the extent that it mischaracterizes the content of the publication. The alleged publication speaks for itself. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions set forth in Paragraph 29 of the FAC.**

30. In February 2019, the Journal of Sexual Medicine published a study titled Testosterone Imposters: An Analysis of Popular Online Testosterone Boosting Supplements, which examined the influence Defendant and similar companies have on the online supplement market."[4]

**ANSWER:**

**Nutra Holdings states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 30 that purport to characterize certain statements from an article allegedly published in the Journal of Sexual Medicine, and therefore denies the same. Nutra Holdings denies paragraph 30 to the extent that it mischaracterizes the content of the publication. The alleged publication speaks for itself. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions set forth in Paragraph 30 of the FAC.**

31. This same study found:

The growing role of the internet, combined with the receptiveness of many men to pursuing therapies that influence testosterone levels, emphasizes the importance of understanding T-Boosters hosted on Amazon.com.

---

[4] Balasubramanian, et al. Testosterone Imposters: An Analysis of Popular Online Testosterone Boosting Supplements, 16 J. SEXUAL MEDICINE 203-12 (Feb. 2019).

Available at https://www.sciencedirect.com/science/article/pii/S 1743609518313821.

*Id.*

**ANSWER:**

**Nutra Holdings states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 31 that purport to characterize certain statements from an article allegedly published in the Journal of Sexual Medicine, and therefore denies the same. Nutra Holdings denies paragraph 31 to the extent that it mischaracterizes the content of the publication. The alleged publication speaks for itself. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions set forth in Paragraph 31 of the FAC.**

32.     Although the study found that "T-Boosters are easily available online," the "investigation revealed that limited human studies have evaluated T-Boosters, resulting in no definitive findings of efficacy," and additionally warned that "[i]n the absence of additional human studies, patients should be cautioned before considering T-Boosters, given the availability of highly effective therapies approved by the Food and Drug Administration." *Id.*

**ANSWER:**

**Nutra Holdings states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 32 that purport to characterize certain statements from an article allegedly published in the Journal of Sexual Medicine, and therefore denies the same. Nutra Holdings denies paragraph 32 to the extent that it mischaracterizes the content of the publication. The alleged publication speaks for itself. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions set forth in Paragraph 32 of the FAC.**

33.     Moreover, consumption of over the counter "natural" or "herbal" purported testosterone boosters presents significant health risks. First, consumers risk purchasing and using a product that will endanger their health. Second, consumers risk purchasing a product that will not effectively treat their condition, forgoing actual treatment of that condition in lieu of an unapproved new drug which may not treat their condition.

1    **ANSWER:**

2    **Nutra Holdings states that it is without knowledge or information sufficient to form**

3 **a belief as to the truth of the allegations in Paragraph 33 that purport to provide a**

4 **rudimentary summary of the purported risks associated with the consumption of**

5 **testosterone boosters, and therefore denies the same. The scientific evidence on this topic is**

6 **significantly more complex than as set forth in Paragraph 33. Nutra Holdings denies the**

7 **remaining allegations, innuendo, and legal conclusions set forth in Paragraph 33 of the**

8 **FAC.**

9    34.    A 2017 case report examining a patient who had consumed one such purported

10 "natural" testosterone booster found "[t]he risk of venous thromboembolic events is" "unclear

11 with non-FDA approved herbal supplements marketed as testosterone enhancers."[5]

12    **ANSWER:**

13    **Nutra Holdings states that it is without knowledge or information sufficient to form**

14 **a belief as to the truth of the allegations in Paragraph 34 that purport to characterize certain**

15 **statements from an article allegedly published in the Cureus Journal of Medical Science, and**

16 **therefore denies the same. Nutra Holdings denies paragraph 34 to the extent that it**

17 **mischaracterizes the content of the publication. The alleged publication speaks for itself.**

18 **Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions set forth**

19 **in Paragraph 34 of the FAC.**

20    35.    The study noted that:

21        Decreased testosterone levels in men are often a normal sign of aging. Testosterone

22        replacement therapy (TRT) is a well-established option for those with symptomatic
        hypogonadism related to low testosterone levels. Conversely, designer herbal

23        supplements in the context of testosterone supplementation are poorly studied, yet
        remain popular among aging men who seek the well-known, often enhancing,

24        effects of testosterone that involve muscle mass and sexual function/drive.

25

26 [5] Nguyen S M, Ko Ko N, Sattar A S, et al. (August 06, 2017) Pulmonary' Embolism Secondary to Testosterone-

27 Enhancing Herbal Supplement Use. Cureus 9(8): el 545. DOI 10.7759/cureus.1545. Available at
 https://pubmed.ncbi.nlm.nih.gov/29018642/.

28

*Id.*

**ANSWER:**

**Nutra Holdings states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 35 that purport to characterize certain statements from an article allegedly published in the Cureus Journal of Medical Science, and therefore denies the same. Nutra Holdings denies paragraph 35 to the extent that it mischaracterizes the content of the publication. The alleged publication speaks for itself. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions set forth in Paragraph 35 of the FAC.**

36.     The study further noted that

> [i]n 2014, the Food and Drug Administration (FDA) issued a warning about the significant risk of venous clots secondary to testosterone product use. Testosterone-induced polycythemia is one of the proposed mechanisms for this increased clotting propensity. Increased thromboxane A2 receptor density on platelets and increased platelet aggregation have also been linked to testosterone treatment in men.

Id.

**ANSWER:**

**Nutra Holdings states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 36 that purport to characterize certain statements from an article allegedly published in the Cureus Journal of Medical Science, and therefore denies the same. Nutra Holdings denies paragraph 36 to the extent that it mischaracterizes the content of the publication. The alleged publication speaks for itself. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions set forth in Paragraph 36 of the FAC.**

37.     Thus, there is "is an inherent risk for vascular events, such as pulmonary embolus, in testosterone supplement use." *Id.*

**ANSWER:**

**Nutra Holdings states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 37 that purport to characterize certain**

**statements from an article allegedly published in the Cureus Journal of Medical Science, and therefore denies the same. Nutra Holdings denies paragraph 37 to the extent that it mischaracterizes the content of the publication. The alleged publication speaks for itself. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions set forth in Paragraph 37 of the FAC.**

## V.     REGULATORY BACKGROUND REGARDING UNAPPROVED DRUGS

38.     "The term 'drug' means . . . (B) articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in man or other animals; and (C) articles (other than food) intended to affect the structure or any function of the body of man or other animals." 21 U.S.C. § 32l(g)(l).

**ANSWER:**

**The allegations of Paragraph 38 of the FAC consist of legal conclusions to which no response is required. To the extent that a response is required, Nutra Holdings denies the allegations in Paragraph 38 to the extent that they mischaracterize, misstate and misapply relevant and applicable law. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions set forth in Paragraph 38 of the FAC.**

39.     A "new drug" is any drug "not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the condition prescribed, recommended, or suggested in the labeling thereof . ." 21 U.S.C. § 321(p)(l).

**ANSWER:**

**The allegations of Paragraph 39 of the FAC consist of legal conclusions to which no response is required. To the extent that a response is required, Nutra Holdings denies the allegations in Paragraph 39 to the extent that they mischaracterize, misstate and misapply relevant and applicable law. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions set forth in Paragraph 39 of the FAC.**

40.     Pursuant to 21 U.S.C § 355(a), "No person shall introduce or deliver for introduction into interstate commerce any new drug . . ." without approval by the FDA.

**ANSWER:**

**The allegations of Paragraph 40 of the FAC consist of legal conclusions to which no response is required. To the extent that a response is required, Nutra Holdings denies the allegations in Paragraph 40 to the extent that they mischaracterize, misstate and misapply relevant and applicable law. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions set forth in Paragraph 40 of the FAC.**

41.     Further, 21 U.S.C. § 331(a) prohibits the "introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded."

**ANSWER:**

**The allegations of Paragraph 41 of the FAC consist of legal conclusions to which no response is required. To the extent that a response is required, Nutra Holdings denies the allegations in Paragraph 41 to the extent that they mischaracterize, misstate and misapply relevant and applicable law. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions set forth in Paragraph 41 of the FAC.**

42.     Under 21 U.S.C. § 352(f), drugs are required to have adequate instructions for safe use.

**ANSWER:**

**The allegations of Paragraph 42 of the FAC consist of legal conclusions to which no response is required. To the extent that a response is required, Nutra Holdings denies the allegations in Paragraph 42 to the extent that they mischaracterize, misstate and misapply the relevant and applicable law. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions set forth in Paragraph 42 of the FAC.**

43.     Pursuant to Title 21 of the code of Federal Regulations, Part 310.528 (21 C.F.R. § 310.528) any OTC drug product that is labeled, represented, or promoted for use as an

1  aphrodisiac, is regarded as a "new drug" within the meaning of section 201(p) of the FDCA

2  (located at 21 U.S.C. § 355(p)).

3      **ANSWER:**

4      **The allegations of Paragraph 43 of the FAC consist of legal conclusions to which no**

5  **response is required. To the extent that a response is required, Nutra Holdings denies the**

6  **allegations in Paragraph 43 to the extent that they mischaracterize, misstate and misapply**

7  **the relevant and applicable law. Nutra Holdings denies the remaining allegations, innuendo,**

8  **and legal conclusions set forth in Paragraph 43 of the FAC.**

9      **VI.    THE SALE OF UNAPPROVED DRUGS ENDANGERS THE PUBLIC.**

10     44.    Unapproved new drugs "pose significant risks to patients because they have not

11  been reviewed by FDA for safety, effectiveness or quality.''[6]

12     **ANSWER:**

13     **Nutra Holdings states that it is without knowledge or information sufficient to form**

14  **a belief as to the truth of the allegations in Paragraph 44 that purport to characterize certain**

15  **statements allegedly published on an FDA webpage, and therefore denies the same. Nutra**

16  **Holdings denies paragraph 44 to the extent that it mischaracterizes the content of the**

17  **webpage. The alleged publication speaks for itself. Nutra Holdings denies the remaining**

18  **allegations, innuendo, and legal conclusions set forth in Paragraph 44 of the FAC.**

19     45.    "Without FDA review, there is no way to know if these drugs are safe and

20  effective for their intended use, whether they are manufactured in a way that ensures consistent

21  drug quality or whether their label is complete and accurate." *Id.*

22     **ANSWER:**

23     **Nutra Holdings states that it is without knowledge or information sufficient to form**

24  **a belief as to the truth of the allegations in Paragraph 45 that purport to characterize certain**

25  **statements allegedly published on an FDA webpage, and therefore denies the same. Nutra**

26

27  [6] https://mvw.fda.gov/drugs/enforcement-activities-fda/unapproved-drugs.

28

1  **Holdings denies paragraph 45 to the extent that it mischaracterizes the content of the**

2  **webpage. The alleged publication speaks for itself. Nutra Holdings denies the remaining**

3  **allegations, innuendo, and legal conclusions set forth in Paragraph 45 of the FAC.**

4     46.    "Unapproved drugs have resulted in patient harm, and the [FDA] works to protect

5  patients from the risks posed by these drugs." *Id.*

6     **ANSWER:**

7     **Nutra Holdings states that it is without knowledge or information sufficient to form**

8  **a belief as to the truth of the allegations in Paragraph 46 that purport to characterize certain**

9  **statements allegedly published on an FDA webpage, and therefore denies the same. Nutra**

10  **Holdings denies paragraph 46 to the extent that it mischaracterizes the content of the**

11  **webpage. The alleged publication speaks for itself. Nutra Holdings denies the remaining**

12  **allegations, innuendo, and legal conclusions set forth in Paragraph 46 of the FAC.**

13     47.    Further, unapproved drugs lack "labels and prescribing information that has"

14  "been reviewed by FDA for accuracy and completeness."[7]

15     **ANSWER:**

16     **Nutra Holdings states that it is without knowledge or information sufficient to form**

17  **a belief as to the truth of the allegations in Paragraph 47 that purport to characterize certain**

18  **statements allegedly published on an FDA webpage, and therefore denies the same. Nutra**

19  **Holdings denies paragraph 47 to the extent that it mischaracterizes the content of the**

20  **webpage. The alleged publication speaks for itself. Nutra Holdings denies the remaining**

21  **allegations, innuendo, and legal conclusions set forth in Paragraph 47 of the FAC.**

22     48.    Consumers using unapproved drugs also run the risk of "unexpected and

23  undocumented safety concerns due to lack of rigorous pre- and postmarket safety surveillance."

24  *Id.*

25     **ANSWER:**

26

27

28  _____

[7] https://www.fda.gov/drugs/enforcement-activities-fda/unapproved-drugs-and-patient-harm.

**Nutra Holdings states that it is without knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 48 that purport to characterize certain statements allegedly published on an FDA webpage, and therefore denies the same. Nutra Holdings denies paragraph 48 to the extent that it mischaracterizes the content of the webpage. The alleged publication speaks for itself. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions set forth in Paragraph 48 of the FAC.**

49.     Additionally, unapproved drugs lead consumers in need of medical treatment to forego medically proven therapies.

**ANSWER:**

**Nutra Holdings denies that the Androsurge product is an unapproved drug. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions contained in Paragraph 49 of the FAC.**

**VII.   DEFENDANTS MARKET AND SELL ANDROSURGE WITH DECEPTIVE AND UNLAWFUL "DRUG" CLAIMS.**

50.     Defendants market and sell Androsurge with claims which suggest that the product can affect the structure or function of the human body and cure, mitigate, or treat disease.

**ANSWER:**

**Nutra Holdings denies that the Androsurge product is an unapproved drug. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions contained in Paragraph 50 of the FAC.**

51.     These claims render Androsurge a "drug."

**ANSWER:**

**Nutra Holdings denies that the allegations, innuendo, and legal conclusions contained in Paragraph 51 of the FAC.**

52.     However, Defendants failed to obtain FDA approval to market and distribute Androsurge in violation 21 U.S.C. § 355.

**ANSWER:**

**Nutra Holdings denies that the Androsurge product is an unapproved drug. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions contained in Paragraph 52 of the FAC.**

53. Defendants manufactured, marketed, distributed, and sold Androsurge Estrogen Blocker & Test Booster ("Androsurge") in packaging bearing claims which suggest the product can mitigate, cure, or treat hormonal imbalance and affect the structure and function of the human body by increasing testosterone and decreasing estrogen.

**ANSWER:**

**Nutra Holdings admits that it manufactures, distributes and sells certain supplements under the brand name "Jacked Factory", including Androsurge Estrogen Blocker & Test Booster\*. The front label of the Androsurge Product includes the following statements: "Block Estrogen\*"; "Harden Physique\*"; "Test Booster\*"; "Aromatase Inhibitor\*". The asterisk leads to the FDA mandated disclosure: "\*Statements regarding dietary supplements have not been evaluated by the FDA and are not intended to diagnose, treat, cure, or prevent any disease or health condition." Nutra Holdings denies that the Androsurge product is an unapproved drug and denies the remaining allegations, innuendo, and legal conclusions contained in Paragraph 53 of the FAC.**

54. Specifically, the Androsurge label claims the product is an "estrogen blocker and testosterone booster" and "aromatase inhibitor" which can "block estrogen," and "harden physique."

**ANSWER:**

**Nutra Holdings admits that it manufactures, distributes and sells certain supplements under the brand name "Jacked Factory", including Androsurge Estrogen Blocker & Test Booster\*. The front label of the Androsurge Product includes the following statements: "Block Estrogen\*"; "Harden Physique\*"; "Test Booster\*"; "Aromatase Inhibitor\*". The asterisk leads to the FDA mandated disclosure: "\*Statements regarding dietary supplements have not been evaluated by the FDA and are not intended to diagnose,**

treat, cure, or prevent any disease or health condition." Nutra Holdings denies that the Androsurge product is an unapproved drug and denies the remaining allegations, innuendo, and legal conclusions contained in Paragraph 54 of the FAC.






ANSWER AND AFFIRMATIVE DEFENSES
*Stephen v. Nutra Holdings, Inc., et al.*, Case No. 3:24-cv-00546-MLH-BLM

55.     Further, Defendants advertised Androsurge with claims that suggest the product can provide benefits akin to those of a prescription drug.

**ANSWER:**

**Nutra Holdings admits that it manufactures, distributes and sells certain supplements under the brand name "Jacked Factory", including Androsurge Estrogen Blocker & Test Booster*. The front label of the Androsurge Product includes the following statements: "Block Estrogen*"; "Harden Physique*"; "Test Booster*"; "Aromatase Inhibitor*". The asterisk leads to the FDA mandated disclosure: "*Statements regarding dietary supplements have not been evaluated by the FDA and are not intended to diagnose, treat, cure, or prevent any disease or health condition." Nutra Holdings denies that the Androsurge product is an unapproved drug and denies the remaining allegations, innuendo, and legal conclusions contained in Paragraph 55 of the FAC.**

56.     The Androsurge label, Nutra Holdings' "Jacked Factory" website, and Defendants' Amazon page for Androsurge contained the following claims, which show the product is intended to affect the structure and function of the body, and to cure, mitigate, treat, or prevent disease:

- "Estrogen Blocker & Testosterone Booster"

- "Test Booster"

- "Blocks Estrogen"

- "Improves Physique"

- "Harden Physique"

- "Aromatase Inhibitor"

- "Improves Strength"

- "Elite Estrogen Blocker for Men"

- "Elite Estrogen Blocker for Men: Androsurge is the first scientifically-dosed, non-proprietary blend, all-natural estrogen reducing supplement for men. Featuring

research-supported ingredients such as grape seed extract and diindolylmethane (DIM)."

- "Optimize your natural potential for maximum muscle building. Androsurge works as a muscle builder by promoting muscle fullness during your training and reduce muscle catabolism."

- "Energy, Vitality, and Libido: Androsurge helps boost your overall energy levels so you can power through your day, workout sessions, & life with a sense of vitality you've never felt before. Feel an improvement in overall confidence, a boost in drive, a reduction of stress, and a relentless alpha drive."

- "Increase Focus & Gain Sharp Mental Clarity: Experience reduced brain fog and precision focus.  Androsurge is the perfect supplement to keep you dialed in during your workouts or workday."

- "Be confident that each bottle of Androsurge is free from impurities and safe."

- "Estrogen Blocker & Physique Hardening Agent"

- "Aromatase Inhibitor & Natural Test Booster"

- "Supports Muscle Growth & Fat Loss"

**ANSWER:**

Nutra Holdings admits that it manufactures, distributes and sells certain supplements under the brand name "Jacked Factory", including Androsurge Estrogen Blocker & Test Booster*. The front label of the Androsurge Product includes the following statements: "Block Estrogen*"; "Harden Physique*"; "Test Booster*"; "Aromatase Inhibitor*".  The asterisk leads to the FDA mandated disclosure: "*Statements regarding dietary supplements have not been evaluated by the FDA and are not intended to diagnose, treat, cure, or prevent any disease or health condition." Nutra Holdings admits that some of the language identified in paragraph 56 appeared, at least in part, on Nutra Holdings' Jacked Factory website, and the Jacked Factory amazon store. Nutra Holdings denies paragraph 56 to the extent that it mischaracterizes the content of the Jacked Factory website and amazon store website. The websites speak for themselves. Nutra Holdings

1   **denies that the Androsurge product is an unapproved drug and denies the remaining**

2   **allegations, innuendo, and legal conclusions contained in Paragraph 56 of the FAC.**

3        57.    These claims suggest that Androsurge can decrease estrogen levels, increase

4   testosterone levels, treat hormonal imbalance, and act as an aphrodisiac. Further, the claims

5   render Androsurge a "drug" within the meaning of 21 U.S.C. 321(g)(1) and an "aphrodisiac

6   drug" within the meaning of 21 C.F.R. 310.528.

7        **ANSWER:**

8        **Nutra Holdings denies that the Androsurge product is an unapproved drug and**

9   **denies the remaining allegations, innuendo, and legal conclusions contained in Paragraph**

10   **57 of the FAC.**

11        58.    A true and correct copy of the Androsurge page from Nutra Holdings' "Jacked

12   Factory" website is attached hereto as **Exhibit 1**.

13        **ANSWER:**

14        **Nutra Holdings admits that Exhibit 1 is a snapshot of the Androsurge page taken at**

15   **one point in time from Nutra Holdings' "Jacked Factory" website. Nutra Holdings denies**

16   **that Exhibit 1 is a complete depiction of the Androsurge page from the Jacked Factory**

17   **website. Nutra Holdings denies paragraph 58 to the extent that it mischaracterizes the**

18   **content of the Jacked Factory website. The website speaks for itself. Nutra Holdings denies**

19   **the remaining allegations, innuendo, and legal conclusions contained in Paragraph 58 of the**

20   **FAC.**

21        59.    The FDA maintains a database of drugs which it has approved at

22   https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm.

23        **ANSWER:**

24        **Nutra      Holdings      admits      that      the      website**

25   **https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm is titled "Drugs@FDA: FDA-**

26   **Approved Drugs" and states that "Drugs@FDA includes information about drugs,**

27   **including biological products, approved for human use in the United States (see FAQ), but**

28

ANSWER AND AFFIRMATIVE DEFENSES
*Stephen v. Nutra Holdings, Inc., et al.*, Case No. 3:24-cv-00546-MLH-BLM

1 does not include information about FDA-approved products regulated by the Center for

2 Biologics Evaluation and Research (for example, vaccines, allergenic products, blood and

3 blood products, plasma derivatives, cellular and gene therapy products)." **Nutra Holdings**

4 **denies paragraph 59 to the extent that it mischaracterizes the content of the FDA webpage.**

5 **The webpage speaks for itself. Nutra Holdings denies the remaining allegations, innuendo,**

6 **and legal conclusions contained in Paragraph 59 of the FAC.**

7      60.     Attached hereto as **Exhibit 2** are search results from this FDA database, showing

8 that the search term "Androsurge" "did not return any results."

9      <u>**ANSWER:**</u>

10      **Nutra        Holdings        admits        that        the        website**

11 **https://www.accessdata.fda.gov/scripts/cder/daf/index.cfm** **is titled "Drugs@FDA: FDA-**

12 **Approved Drugs" and states that "Drugs@FDA includes information about drugs,**

13 **including biological products, approved for human use in the United States (see FAQ), but**

14 **does not include information about FDA-approved products regulated by the Center for**

15 **Biologics Evaluation and Research (for example, vaccines, allergenic products, blood and**

16 **blood products, plasma derivatives, cellular and gene therapy products)." Nutra Holdings**

17 **denies paragraph 60 to the extent that it mischaracterizes the content of the FDA webpage.**

18 **The webpage speaks for itself. Nutra Holdings denies the remaining allegations, innuendo,**

19 **and legal conclusions contained in Paragraph 60 of the FAC.**

20      61.     Thus, Defendants failed to obtain FDA approval prior to marketing, distributing,

21 and selling Androsurge.

22      <u>**ANSWER:**</u>

23      **Nutra Holdings denies that the Androsurge product is an unapproved drug and**

24 **denies the remaining allegations, innuendo, and legal conclusions contained in Paragraph**

25 **61 of the FAC.**

26

27

28

ANSWER AND AFFIRMATIVE DEFENSES
*Stephen v. Nutra Holdings, Inc., et al.*, Case No. 3:24-cv-00546-MLH-BLM

1

## VIII.   ANDROSURGE IS AN UNAPPROVED DRUG.

2       62.    The term 'drug' means . . . (B) articles intended for use in the diagnosis, cure,

3   mitigation, treatment, or prevention of disease in man or other animals; and (C) articles (other

4   than food) intended to affect the structure or any function of the body of man or other animals."

5   21 U.S.C. § 321(g)(1).

6       **ANSWER:**

7       **The allegations of Paragraph 62 of the FAC consist of legal conclusions to which no**

8   **response is required. To the extent that a response is required, Nutra Holdings denies the**

9   **allegations in Paragraph 62 to the extent that they mischaracterize, misstate and misapply**

10  **the relevant and applicable law. Nutra Holdings denies the remaining allegations, innuendo,**

11  **and legal conclusions set forth in Paragraph 62 of the FAC.**

12      63.    Here, Androsurge is a "drug" for regulatory purposes because it is advertised as a

13  product which will cure, mitigate, treat, or prevent disease such as hormonal imbalance or low

14  testosterone and which will affect the structure or function of the body by increasing testosterone

15  levels, decreasing estrogen levels, enhancing libido, and improving physique.

16      **ANSWER:**

17      **Nutra Holdings denies that the Androsurge product is an unapproved drug and**

18  **denies the remaining allegations, innuendo, and legal conclusions contained in Paragraph**

19  **63 of the FAC.**

20      64.    The claims on the packaging and website of Androsurge render it an unapproved

21  new drug.

22      **ANSWER:**

23      **Nutra Holdings denies that the Androsurge product is an unapproved drug and**

24  **denies the remaining allegations, innuendo, and legal conclusions contained in Paragraph**

25  **64 of the FAC.**

26

27

28

ANSWER AND AFFIRMATIVE DEFENSES
*Stephen v. Nutra Holdings, Inc., et al.*, Case No. 3:24-cv-00546-MLH-BLM

65.     The FDA has determined that the following claims, which are similar to those Defendants make regarding Androsurge, constitute "drug claims":

- "Natural testosterone booster" (**Exhibit 3**, FDA Warning Letter to Unlimited Nutrition);

- "[I]ncrease estrogen and testosterone levels" (Exhibit 4, FDA Warning Letter to Star Health &

- Beauty, LLC);

- "Increase Lean Muscle Mass" (Exhibit 4);

- "Highly anabolic" (Exhibit 5, FDA Warning Letter to AndroPharm, LLC);

- "Increase Muscle Mass" (Exhibit 5);

- "Activate Numerous Anabolic Pathways" (Exhibit 5);

- "Explosive Muscle & Strength Gains" (Exhibit 5)

**ANSWER:**

**Nutra Holdings states that it is without knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations which purport to summarize certain Warning Letters issued by the FDA, and therefore denies the same. Nutra Holdings denies the allegations in paragraph 65 to the extent that they misstate and mischaracterize the FDA Warning Letters. Those documents speak for themselves. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions contained in Paragraph 65 of the FAC.**

66.     A "new drug" is any drug "not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the condition prescribed, recommended, or suggested in the labeling thereof . . . . "21 U.S.C. § 321(p)(l).   Here, Androsurge is a "new drug" within the meaning of the FDCA because it is not generally recognized as safe and effective for its intended uses. See Title 21 of the Code of Federal Regulations, Chapter I, Subchapter D; 21 C.F.R. § 330.1.

**ANSWER:**

**The allegations of Paragraph 66 of the FAC consist of legal conclusions to which no response is required. To the extent that a response is required, Nutra Holdings denies the allegations in Paragraph 66 to the extent that they mischaracterize, misstate and misapply the relevant and applicable law. Nutra Holdings further denies that the Androsurge product is an "unapproved" or "new" drug. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions set forth in Paragraph 66 of the FAC.**

67.     "No person shall introduce or deliver for introduction into interstate commerce any new drug . . . ." without approval by the FDA. 21 U.S.C 355(a); see also 21 U.S.C. 331(d).

**ANSWER:**

**The allegations of Paragraph 67 of the FAC consist of legal conclusions to which no response is required. To the extent that a response is required, Nutra Holdings denies the allegations in Paragraph 67 to the extent that they mischaracterize, misstate and misapply the relevant and applicable law. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions set forth in Paragraph 67 of the FAC.**

68.     Defendants have not received approval from the FDA to sell Androsurge.

**ANSWER:**

**Nutra Holdings denies that the Androsurge product is an "unapproved" drug. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions set forth in Paragraph 68 of the FAC.**

69.     The sale of unapproved new drugs is illegal and dangerous. First, consumers risk purchasing and using a product that will endanger their health. Second, consumers risk purchasing a product that will not effectively treat their condition, forgoing actual treatment of that condition in lieu of an unapproved new drug which may not treat their condition. The FDA's regulatory regimen helps ensure that such products are kept away from consumers.

**ANSWER:**

**Nutra Holdings denies that the Androsurge product is an "unapproved" drug and therefore the allegations in paragraph 69 are irrelevant. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions set forth in Paragraph 69 of the FAC.**

70.     Defendants' failure to comply with these regulations puts consumers at risk and gives them an unfair advantage over competitors that do commit the time and expense of complying with such necessary regulations.

**ANSWER:**

**Nutra Holdings denies that the Androsurge product is an "unapproved" drug and therefore the allegations in paragraph 70 are irrelevant. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions set forth in Paragraph 70 of the FAC.**

71.     Androsurge does not qualify for the reduced level of regulation applicable to certain nutrition supplement products for several reasons. The challenged marketing materials neither describe the role of any nutrient or dietary ingredient intended to affect the structure or function in humans, characterize the documented mechanism by which any nutrient or dietary ingredient acts to maintain such structure or function, nor describe general well-being from consumption of any nutrient or dietary ingredient. 21 U.S.C. § 343(r)(6)(A).

**ANSWER:**

**The allegations of Paragraph 71 of the FAC consist of legal conclusions to which no response is required. To the extent that a response is required, Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in Paragraph 71 of the FAC.**

72.     California also prohibits the sale of unapproved new drugs. Health & Saf. Code § 111550.

**ANSWER:**

**The allegations of Paragraph 72 of the FAC consist of legal conclusions to which no response is required. To the extent that a response is required, Nutra Holdings denies that the Androsurge product is an "unapproved" drug and therefore the allegations in paragraph**

**72 are irrelevant. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions set forth in Paragraph 72 of the FAC.**

## IX. DEFENDANTS' ADVERTISING FOR ANDROSURGE IS DECEPTIVE ANDMISLEADING RENDERING THE PRODUCTS MISBRANDED.

73.    It is unlawful to manufacture or sell misbranded drugs. 21 U.S.C. § 331(a), (b), (c), & (g).

**ANSWER:**

**The allegations of Paragraph 73 of the FAC consist of legal conclusions to which no response is required. To the extent that a response is required, Nutra Holdings denies the allegations in Paragraph 73 to the extent that they mischaracterize, misstate and misapply the relevant and applicable law. Nutra Holdings further denies that the Androsurge product is an "unapproved" or "misbranded" drug. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions set forth in Paragraph 73 of the FAC.**

74.    A drug is misbranded if "its labeling is false or misleading in any particular."[8] 21 U.S.C. § 352(a)(1).

> If an article is alleged to be misbranded because the labeling or advertising is misleading, then in determining whether the labeling or advertising is misleading there shall be taken into account (among other things) not only representations made or suggested by statement, word, design, device, or any combination thereof, but also the extent to which the labeling or advertising fails to reveal facts material in the light of such representations or material with respect to consequences which may result from the use of the articles to which the labeling or advertising relates under the conditions of use prescribed in the labeling or advertising thereof or under such conditions of use as are customary or usual.

21 U.S.C.S. § 321(n).

**ANSWER:**

---

[8] Under the FDCA, "'labeling' means all labels and other written, printed, or graphic matters (1) upon any article or any of its containers or wrappers, or (2) accompanying such article." 21 U.S.C. 321(m). This includes websites associated with the products." See *Sandoval v. Pharmacare US, Inc.*, 730 Fed. App'x 417, 420 (9th Cir. 2018).

1
2
3
4
5
6

**The allegations of Paragraph 74 of the FAC consist of legal conclusions to which no response is required. To the extent that a response is required, Nutra Holdings denies the allegations in Paragraph 74 to the extent that they mischaracterize, misstate and misapply the relevant and applicable law. Nutra Holdings further denies that the Androsurge product is an "unapproved" or "misbranded" drug. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions set forth in Paragraph 74 of the FAC.**

7
8
9
10
11
12
13

75.     Defendants' deceptive efficacy representations regarding Androsurge described herein render the product misbranded pursuant to Cal. Health & Saf. Code § 110100 (adopting all FDA labeling regulations as state regulations), § 110398 ("It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded."), § 111330 (drug label misbranded if false or misleading in any particular), and further violate Cal. Bus. & Prof. Code § 17200 (Unfair Competition Law "Fraudulent" Prong) § 17500 (False Advertising Law) and Cal. Civ. Code § 1750 (CLRA).

14

**ANSWER:**

15
16
17

**The allegations of Paragraph 73 of the FAC consist of legal conclusions to which no response is required. To the extent that a response is required, Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in Paragraph 75 of the FAC.**

18
19
20
21
22
23

76.     Because Androsurge claims to treat conditions not amenable to self-diagnosis, directions are not and likely cannot be written such that a layperson can safely use this product to treat those conditions. The label of Androsurge therefore lacks "adequate directions for use," rendering the product misbranded. 21 U.S.C. § 352(f)(1); *see also* § 21 C.F.R. 201.5 ("'Adequate directions for use' means directions under which the layman can use a drug safely and for the purposes for which it is intended.").

24

**ANSWER:**

25
26
27

**The allegations of Paragraph 73 of the FAC consist of legal conclusions to which no response is required. To the extent that a response is required, Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in Paragraph 76 of the FAC.**

28

77. Plaintiff used Androsurge as directed, but it failed to deliver the advertised benefits.

**ANSWER:**

**Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in Paragraph 77 of the FAC.**

**X.      DEFENDANTS FAILED TO COMPLY WITH 21 C.F.R. 101.5.**

78. Pursuant to 21 C.F.R. § 101.5 §§ (a)-(b),

(a)     The label of a food in packaged form shall specify conspicuously the name and place of business of the manufacturer, packer, or distributor.

(b)     The requirement for declaration of the name of the manufacturer, packer, or distributor shall be deemed to be satisfied, in the case of a corporation, only by the actual corporate name, which may be preceded or followed by the name of the particular division of the corporation. In the case of an individual, partnership, or association, the name under which the business is conducted shall be used.

**ANSWER:**

**The allegations of Paragraph 78 of the FAC consist of legal conclusions to which no response is required. To the extent that a response is required, Nutra Holdings denies the allegations in Paragraph 78 to the extent that they mischaracterize, misstate and misapply the relevant and applicable law. Nutra Holdings further denies that the Androsurge product is an "unapproved" drug. Nutra Holdings denies the remaining allegations, innuendo, and legal conclusions set forth in Paragraph 78 of the FAC.**

79. Here, Defendants violate 21 C.F.R. § 101.5 §§ (a)-(c).

**ANSWER:**

**Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in Paragraph 79 of the FAC.**

80. Specifically, they violate 21 C.F.R. § 101.5(a) because the Androsurge label does not "specify conspicuously the name and place of business of the manufacturer, packer, or distributor."

1

**ANSWER:**

2

**Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in**

3

**Paragraph 80 of the FAC.**

4

    81.    Defendants violate 21 C.F.R. § 10l.5(b) because the Androsurge label does not

5

bear Nutra Holdings' "actual corporate name." Rather, the label states that the product is

6

"Manufactured for Jacked Factory." However, "Jacked Factory" is not a corporation, but a

7

trademark controlled by Defendants.

8

**ANSWER:**

9

**Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in**

10

**Paragraph 81 of the FAC.**

11

    82.    Further, pursuant to 21 C.F.R. § 101.5(d), supplement manufacturers are required

12

to provide a "statement of the place of business" on the product label, which

13

        shall include the street address, city, State, and ZIP code; however, the street

14

        address may be omitted if it is shown in a current city directory or telephone
        directory. The requirement for inclusion of the ZIP code shall apply only to

15

        consumer commodity labels developed or revised after the effective date of this
        section. In the case of nonconsumer packages, the ZIP code shall appear either on

16

        the label or the labeling (including invoice).

17

**ANSWER:**

18

**The allegations of Paragraph 82 of the FAC consist of legal conclusions to which no**

19

**response is required. To the extent that a response is required, Nutra Holdings denies the**

20

**allegations in Paragraph 82 to the extent that they mischaracterize, misstate and misapply**

21

**the relevant and applicable law. Nutra Holdings denies the remaining allegations, innuendo,**

22

**and legal conclusions set forth in Paragraph 82 of the FAC.**

23

    83.    Here, Defendants fail to provide "statement of the place of business" as required

24

by 21 C.F.R. § 101.5(d).

25

**ANSWER:**

26

**Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in**

27

**Paragraph 83 of the FAC.**

28

84.     Specifically, Defendants fail to "include the street address."

**ANSWER:**

**Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in Paragraph 84 of the FAC.**

85.     The label reads: "Manufactured for Jacked Factory, St John's, NL A1A 5SAl."



**ANSWER:**

**Nutra Holdings admits that the language "Manufactured for Jacked Factory, St John's, NL A1A 5SA1" appears on the rear label of certain Androsurge products. Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in Paragraph 85 of the FAC.**

86.     Defendants' failure to include a street address as required constitutes a violation of 21 C.F.R. § 101.5(d).

**ANSWER:**

**Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in Paragraph 86 of the FAC.**

1    **XI.    DEFENDANTS' PRACTICES WERE "UNFAIR" WITHIN THE MEANING**
2            **OF THE CALIFORNIA UNFAIR COMPETITION LAW.**

3            87.    Defendants' practices as described herein are "unfair" within the meaning of the

4    California Unfair Competition Law because Defendants' conduct is immoral, unethical,

5    unscrupulous, and substantially injurious to consumers, and the utility of this conduct to

6    Defendants does not outweigh the gravity of the harm to Defendants' victims.

7            **ANSWER:**

8            **Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in**

9    **Paragraph 87 of the FAC.**

10           88.    In particular, while Defendants' marketing and sale of Androsurge with "drug"

11   claims as defined by 21 U.S.C. § 321(g) and absent FDA approval to do so allowed Defendants

12   to realize higher profit margins than if they did not use unlawful marketing tactics, this utility is

13   small and far outweighed by the gravity of the economic harm and potential physical harm

14   Defendants inflict upon consumers. Further, the injury to consumers from Defendants' practices

15   is substantial, not outweighed by benefits to consumers or competition, and not an injury that

16   consumers themselves could reasonably have avoided.

17           **ANSWER:**

18           **Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in**

19   **Paragraph 88 of the FAC.**

20   **XII.   DEFENDANTS' PRACTICES WERE "UNLAWFUL" WITHIN THE MEANING**
21           **OF THE CALIFORNIA UNFAIR COMPETITION LAW.**

22           89.    Defendants' practices as described herein are "unlawful" within the meaning of

23   the California Unfair Competition Law because the marketing, sale, and distribution of

24   Androsurge violates the Federal Food, Drug, and Cosmetic Act, as well as California's Sherman

25   Food, Drug, and Cosmetic Law.

26           **ANSWER:**

27

28

**Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in Paragraph 89 of the FAC.**

90.     Defendants' conduct described herein is "unlawful" because it violated the following portions of the Federal Food, Drug, and Cosmetic Act ("FDCA"):

- **21 U.S.C. § 331(a)**, prohibiting the "introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded";

- **21 U.S.C. § 331(b)**, prohibiting the "adulteration or misbranding of any food, drug, device, tobacco product, or cosmetic in interstate commerce";

- **21 U.S.C. § 352(0(1)**, requiring drugs to have adequate directions for use;

- **21 U.S.C. § 355(a)**, prohibiting the sale of unapproved new drugs;

- **21 C.F.R. § 101.5(a)-(b)**, requiring supplement labels "to conspicuously" list "the name and place of business of the manufacturer, packer, or distributor" using the "actual corporate name";

- **21 C.F.R. § 101.5(d)**, requiring supplement manufacturers to provide a "statement of the place of business" on product labels.

**<u>ANSWER:</u>**

**Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in Paragraph 90 of the FAC.**

91.     Defendants' conduct described herein also violates multiple provisions of California law including, *inter alia*:

- **Cal. Health & Sat Code § 110100** *et seq.*, which adopts all FDA labeling regulations as state regulations;

- **Cal. Health & Saf. Code § 111330**, "Any drug or device is misbranded if its labeling is false or misleading in any particular.";

- **Cal. Health & Saf. Code § 110398**, "It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.";

- **Cal. Health & Saf. Code § 111440**, "It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any drug or device that is misbranded.";

- **Cal. Health & Saf. Code § 111445**, "It is unlawful for any person to misbrand any drug or device.",

- **Cal. Health & Saf. Code § 11145**0, "It is unlawful for any person to receive in commerce any drug or device that is misbranded or to deliver or proffer for delivery any drug or device.";

- **Cal. Health & Saf. Code § 111550**, prohibiting sale of new drug unless approved under 21 U.S.C. § 355.

**ANSWER:**

**Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in Paragraph 91 of the FAC.**

92.     Defendants' unlawful marketing and advertising of Androsurge constitutes a violation of the FDCA and the Sherman Law and, as such, violated the "unlawful" prong of the UCL.

**ANSWER:**

**Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in Paragraph 92 of the FAC.**

93.     Defendants' unlawful acts allowed them to sell more units of Androsurge, than they would have otherwise, and at a higher price and higher margin.

**ANSWER:**

**Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in Paragraph 93 of the FAC.**

94.     In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff seeks an order enjoining Defendants from continuing to conduct business through unlawful, unfair, and/or fraudulent acts and practices and to commence a corrective advertising campaign.

**ANSWER:**

**Nutra Holdings admits that Plaintiff seeks injunctive relief. Nutra Holdings denies that Plaintiff is entitled to any injunctive relief or any relief whatsoever. Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in Paragraph 94 of the FAC.**

1    95.    Plaintiff also seeks an order for the disgorgement and restitution of all revenue

2    received by Defendants from the sale of Androsurge.

3    **ANSWER:**

4    **Nutra Holdings admits that Plaintiff seeks disgorgement and restitution. Nutra**

5    **Holdings denies that Plaintiff is entitled to any disgorgement, restitution or any relief**

6    **whatsoever. Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth**

7    **in Paragraph 94 of the FAC.**

8    **XIII.   PLAINTIFF'S PURCHASE OF ANDROSURGE AND RELATED INJURY**

9    96.    Plaintiff Stephen purchased Androsurge from Defendant Amazon's website in

10   2023.

11   **ANSWER:**

12   **Nutra Holdings is without knowledge or information sufficient to form a belief as to**

13   **the truth of Plaintiff's allegations with respect to his purchasing habits. To the extent that**

14   **a response is required, Nutra Holdings denies the allegations, innuendo, and legal**

15   **conclusions contained in Paragraph 96 of the FAC.**

16   97.    When Plaintiff purchased Androsurge, he was seeking a safe and effective

17   testosterone booster and estrogen blocker which was sold in compliance with FDA regulations

18   and California law.

19   **ANSWER:**

20   **Nutra Holdings is without knowledge or information sufficient to form a belief as to**

21   **the truth of Plaintiff's allegations with respect to his purchasing habits. To the extent that**

22   **a response is required, Nutra Holdings denies the allegations, innuendo, and legal**

23   **conclusions contained in Paragraph 97 of the FAC.**

24   98.    Plaintiff purchased Androsurge believing it had the qualities he sought based on

25   the product's labeling, website, and Amazon page and the natural assumption that products sold

26   in stores and online by large companies would be sold in compliance with FDA regulations and

27   California law.

28

ANSWER AND AFFIRMATIVE DEFENSES
*Stephen v. Nutra Holdings, Inc., et al.,* Case No. 3:24-cv-00546-MLH-BLM

1

**ANSWER:**

2

**Nutra Holdings is without knowledge or information sufficient to form a belief as to**

3

**the truth of Plaintiff's allegations with respect to his purchasing habits. To the extent that**

4

**a response is required, Nutra Holdings denies the allegations, innuendo, and legal**

5

**conclusions contained in Paragraph 98 of the FAC.**

6

99.    Plaintiff purchased Androsurge instead of competing products based on

7

Defendants' unlawful conduct described herein.

8

**ANSWER:**

9

**Nutra Holdings is without knowledge or information sufficient to form a belief as to**

10

**the truth of Plaintiff's allegations with respect to his purchasing habits. To the extent that**

11

**a response is required, Nutra Holdings denies the allegations, innuendo, and legal**

12

**conclusions contained in Paragraph 99 of the FAC.**

13

100.    Plaintiff suffered economic injury when he purchased Androsurge because it was

14

not safe and effective and because it was sold in violation of FDA regulations and California law.

15

**ANSWER:**

16

**Nutra Holdings denies the allegations, innuendo, and legal conclusions contained in**

17

**Paragraph 100 of the FAC.**

18

101.    Plaintiff would not have purchased Androsurge had he known that the product was

19

ineffective and sold in violation of federal and California law.

20

**ANSWER:**

21

**Nutra Holdings denies the allegations, innuendo, and legal conclusions contained in**

22

**Paragraph 101 of the FAC.**

23

102.    Androsurge was offered for sale in violation of California and federal law and has

24

a value of $0 because it is both illegal and ineffective.

25

**ANSWER:**

26

**Nutra Holdings denies the allegations, innuendo, and legal conclusions contained in**

27

**Paragraph 102 of the FAC.**

28

103.   Plaintiff would consider purchasing Androsurge in the future if he could be assured that the product is (l) safe and effective and (2) sold in compliance with all FDA regulations and California law.

**ANSWER:**

**Nutra Holdings is without knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations with respect to his purchasing habits. To the extent that a response is required, Nutra Holdings denies the allegations, innuendo, and legal conclusions contained in Paragraph 103 of the FAC.**

## XIV.   **DELAYED DISCOVERY**

104.   Plaintiff Russell Stephen did not discover that Defendants' behavior was unfair and unlawful until September 2023 , when he learned that Defendants had been selling Androsurge in violation of federal and California law.  Until this time, he lacked the knowledge regarding the facts of his claims against Defendants.

**ANSWER:**

**Nutra Holdings is without knowledge or information sufficient to form a belief as to the truth of Plaintiff's allegations in paragraph 104 of the FAC. To the extent that a response is required, Nutra Holdings denies the allegations, innuendo, and legal conclusions contained in Paragraph 104 of the FAC.**

105.   Plaintiff is a reasonably diligent consumer who exercised reasonable diligence in his purchase and use of Androsurge. Nevertheless, he would not have been able to discover Defendants ' unfair and unlawful practices and lacked the means to discover them given that, like nearly all consumers, he is not an expert on FDA regulations or California law pertaining to the marketing and sale of drugs.

**ANSWER:**

**Nutra Holdings denies the allegations, innuendo, and legal conclusions contained in Paragraph 104 of the FAC.**

1

## XV.   <u>ADDITIONAL TOLLING ALLEGATIONS</u>

2       106.    At all relevant times, Defendants were aware that their marketing of Androsurge

3   violated FDA regulations and California law.

4       **<u>ANSWER:</u>**

5       **Nutra Holdings denies the allegations, innuendo, and legal conclusions contained in**

6   **Paragraph 106 of the FAC.**

7       107.    As supplement producers and sellers, Defendants had a continuing and affirmative

8   moral and legal obligation to refrain from marketing and selling supplements with claims that

9   violate FDA regulations and California law.

10      **<u>ANSWER:</u>**

11      **Nutra Holdings denies that the Androsurge product is an unapproved drug. Nutra**

12  **Holdings denies the remaining allegations, innuendo, and legal conclusions contained in**

13  **Paragraph 107 of the FAC.**

14      108.    Plaintiff had no duty and no reason to inquire as to whether Androsurge was

15  marketed in violation of state and federal food safety laws. California, as a matter of economic

16  regulation, places the burden of ensuring that supplements are safe, effective, and sold in

17  compliance with FDA regulations and California law, on their manufacturers, not the general

18  public.

19      **<u>ANSWER:</u>**

20      **The allegations of Paragraph 108 of the FAC consist of legal conclusions to which no**

21  **response is required. To the extent that a response is required, Nutra Holdings denies the**

22  **allegations in Paragraph 108 to the extent that they mischaracterize, misstate and misapply**

23  **the relevant and applicable law. Nutra Holdings further denies that the Androsurge product**

24  **is an "unapproved" drug. Nutra Holdings denies the remaining allegations, innuendo, and**

25  **legal conclusions set forth in Paragraph 108 of the FAC.**

26

27

28

ANSWER AND AFFIRMATIVE DEFENSES
*Stephen v. Nutra Holdings, Inc., et al.*, Case No. 3:24-cv-00546-MLH-BLM

109.    Reasonable consumers, including Plaintiff, had no reason to suspect Defendants' unfair competition and violations of federal and state law prohibiting the sale of unapproved and misbranded drugs.

**ANSWER:**

**Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in Paragraph 109 of the FAC.**

110.    Defendants owed a special duty to Plaintiff, akin to a fiduciary duty, which they violated by marketing and selling Androsurge with claims that suggest the product can affect the structure or function of the human body or can treat, mitigate, or cure disease without obtaining FDA approval to do so. Defendants were aware that their conduct was oppressive and cruel, causing economic injury and discouraging consumers from seeking medically proven treatments, yet consciously continued these acts for years while knowing the extent of the harm it was causing. Equity and the public policy of California, embodied in its statutes, jointly demand, in such circumstance, that laches and tolling cannot apply in such a way to permit Defendants to continue to enjoy the fruits of their intentional, cruel, oppressive, and unlawful acts.

**ANSWER:**

**Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in Paragraph 110 of the FAC.**

**FIRST CAUSE OF ACTION**

**Unfair Competition Law,**

**Unfair Prong, Bus. & Prof. Code 17200** *et seq.*

111.    In both causes of action, Plaintiff realleges and incorporates by reference each and every allegation contained elsewhere in the Complaint, as if fully set forth herein.

**ANSWER:**

**Nutra Holdings realleges and incorporates by reference each and every answer contained elsewhere in the FAC as if fully set forth herein.**

112.    The business practices and omissions of Defendants as alleged herein constitute "unfair" business acts and practices in that Defendants' conduct is immoral, unethical, unscrupulous, and substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to Defendants' victims.

**ANSWER:**

**Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in Paragraph 112 of the FAC.**

113.    Further, Defendants' practices were unfair because they violated public policy as declared by specific constitutional, statutory, or regulatory provisions, including those embodied in the FDCA and the California Health and Safety Code.

**ANSWER:**

**Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in Paragraph 113 of the FAC.**

114.    Moreover, Defendants' practices were unfair because the injury to consumers from Defendants' practices was substantial, not outweighed by benefits to consumers or competition, and not one that consumers themselves could reasonably have avoided or should be obligated to avoid.

**ANSWER:**

**Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in Paragraph 114 of the FAC.**

## SECOND CAUSE OF ACTION

### Unfair Competition Law,

### Unlawful Prong, Cal. Bus. & Prof. Code 17200 *et seq*.

115.    Defendants have made and distributed, in interstate commerce and in this county, a product that was marketed with unlawful "drug claims" without obtaining FDA approval to do so.

**ANSWER:**

**Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in Paragraph 115 of the FAC.**

116.    Defendants' conduct violated the following portions of the Federal Food, Drug, and Cosmetic Act ("FDCA"):

- **21 U.S.C. § 331(a)**, prohibiting the "introduction or delivery for introduction into interstate commerce of any food, drug, device, tobacco product, or cosmetic that is adulterated or misbranded";

- **21 U.S.C. § 331(b)**, prohibiting the "adulteration or misbranding of any food, drug, device, tobacco product, or cosmetic in interstate commerce"•

- **21 U.S.C. § 352(0(1)**, requiring drugs to have adequate directions for use;

- **21 U.S.C. § 355(a)**, prohibiting the sale of unapproved new drugs; and

- **21 C.F.R. § 101.5(a)-(b)**, requiring supplement labels "to conspicuously" list "the name and place of business of the manufacturer, packer, or distributor" using the "actual corporate name";

- **21 C.F.R. § 101.5(d)**, requiring supplement manufacturers to list a "statement of the place of business" on product labels.

**ANSWER:**

**Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in Paragraph 116 of the FAC.**

117.    Defendants' conduct also violates other provisions of California law including, *inter alia:*

- **Cal. Health & Saf. Code § 110100 *et seq*.**, which adopts all FDA regulations as state regulations;

- **Cal. Health & Saf. Code § 111330**, "Any drug or device is misbranded if its labeling is false or misleading in any particular.";

- **Cal. Health & Saf. Code § 110398**, "It is unlawful for any person to advertise any food, drug, device, or cosmetic that is adulterated or misbranded.";

ANSWER AND AFFIRMATIVE DEFENSES
*Stephen v. Nutra Holdings, Inc., et al.*, Case No. 3:24-cv-00546-MLH-BLM

- **Cal. Health & Saf. Code § 111440**, "It is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any drug or device that is misbranded.";

- **Cal. Health & Saf. Code § 111445**, "It is unlawful for any person to misbrand any drug or device.",

- **Cal. Health & Saf. Code § 111450**, "It is unlawful for any person to receive in commerce any drug or device that is misbranded or to deliver or proffer for delivery any drug or device.";

- **Cal. Health & Saf. Code § 111550**, prohibiting sale of new drug unless approved under 21 U.S.C. § 355.

**ANSWER:**

**Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in Paragraph 117 of the FAC.**

118.    The challenged labeling and website statements made by Defendants thus constituted violations of the FDCA and the Sherman Law and, as such, violated the "unlawful" prong of the UCL.

**ANSWER:**

**Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in Paragraph 118 of the FAC.**

119.    Defendants employed unlawful marketing tactics to induce Plaintiff to purchase a product that was of lesser value and quality than advertised and which was not safe and effective, or FDA approved.

**ANSWER:**

**Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in Paragraph 119 of the FAC.**

120.    The marketing and sale of Androsurge described herein constitute violations of the FDCA and the Sherman Law and, as such, violated the "unlawful" prong of the UCL.

1

**ANSWER:**

2

**Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in**

3

**Paragraph 120 of the FAC.**

4

121.    Had Plaintiff known that Androsurge was offered for sale in violation of California

5

and federal regulations, he would not have purchased it.

6

**ANSWER:**

7

**Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in**

8

**Paragraph 121 of the FAC.**

9

122.    Plaintiff suffered injury in fact and lost money or property as a result of

10

Defendants' unlawful conduct: he was denied the benefit of the bargain when he decided to

11

purchase Androsurge over competing products, which are legal, less expensive, and do not make

12

drug claims on their packaging and web properties.

13

**ANSWER:**

14

**Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in**

15

**Paragraph 122 of the FAC.**

16

123.    Defendants' unlawful acts allowed them to sell more units of Androsurge than

17

they would have otherwise, and at a higher price, and higher margin.

18

**ANSWER:**

19

**Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in**

20

**Paragraph 123 of the FAC.**

21

124.    Had Plaintiff been aware of Defendants' unlawful marketing tactics, he would not

22

have purchased Androsurge, and had Defendants not advertised and sold Androsurge in an

23

unlawful manner, Plaintiff would have paid less for it.

24

**ANSWER:**

25

**Nutra Holdings denies the allegations, innuendo, and legal conclusions set forth in**

26

**Paragraph 124 of the FAC.**

27

28

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, prays for judgment against Defendants as follows:

A.     An award of restitution of $39 to Plaintiff Russell Stephen;

B.     A temporary restraining order, preliminary injunction, and permanent injunction;

C.     A service award of $4,000 to Plaintiff Russell Stephen for obtaining an injunction on behalf of the public;

D.     An order requiring Defendants to conduct a corrective advertising campaign;

E.     Declaratory relief that the conduct alleged herein is unlawful;

F.     Pre-judgment, and post-judgment interest; and

G.     An award of attorney fees and costs.

**Wherefore, Nutra Holdings denies that Plaintiff is entitled to the relief specified in the FAC, or any other relief. Nutra Holdings respectfully requests that this Court deny all such relief, and grant judgment in favor of Nutra Holdings. Nutra Holdings further requests that it be awarded costs of suit, attorneys' fees, and any other relief the Court deems proper.**

**NUTRA HOLDINGS, INC. AND NUTRA HOLDINGS TWO, INC.'S AFFIRMATIVE DEFENSES**

Nutra Holdings, Inc. and Nutra Holdings Two, Inc. ("Nutra Holdings"), by and through their attorneys, for their Affirmative Defenses, states as follows. Nutra Holdings reserves the right to assert additional affirmative defenses that discovery indicates are proper.

**First Affirmative Defense**

**(Lack of Standing)**

1.     Plaintiff lacks standing to pursue his purported claims, and/or seek the relief sought by the FAC against Nutra Holdings. On information and belief, Plaintiff lacks standing because (1) he did not purchase the Products; (2) he did not purchase the Products prior to obtaining knowledge of the allegations that form the basis of this lawsuit; (3) the terms of the challenged statements were and are not material to him; (4) he did not reasonably rely on the

labels or product marketing; (5) Plaintiff is not able to demonstrate any likelihood of future harm; and/or (6) Plaintiff is unable to demonstrate that he suffered any cognizable injury, including for the foregoing reasons.

## Second Affirmative Defense

### (Lack of Causation)

2.      Plaintiff lacks causation because any purported reliance and/or injury alleged in the FAC was not caused by the Androsurge product's labels or marketing statements.

## Third Affirmative Defense

### (Failure to Mitigate)

3.      On information and belief, Plaintiff failed to mitigate any harms alleged in the FAC, including by failing to act reasonably, and continuing to purchase the Androsurge product after learning the purported facts on which he basis his FAC.

## Fourth Affirmative Defense

### (Waiver)

4.      Plaintiff waived any right to complain about the Androsurge product when he purchased the product with full knowledge of its contents and/or the potential effects thereof, and/or Plaintiff assumed any alleged risks from using the Androsurge product.

## Fifth Affirmative Defense

### (Voluntary Payment Doctrine)

5.      Plaintiff's claims and/or requests for relief are barred, in whole or in part, by the voluntary payment doctrine, because Plaintiff voluntarily paid for the Androsurge product with full knowledge of the facts and circumstances pursuant to which such amounts were paid.

## Sixth Affirmative Defense

### (Laches/Failure to Notify in Reasonable Time)

6.      Plaintiff's claims are barred due to the doctrine of laches, or for his failure to timely provide notice of any purported issues concerning the Androsurge products within a reasonable period of time.

**Seventh Affirmative Defense**

**(Judicial Abstention/Primary Jurisdiction)**

7.     Plaintiff's claims should be dismissed, and/or this action should be stayed under the doctrines of judicial abstention and/or primary jurisdiction.

**Eighth Affirmative Defense**

**(Preemption)**

8.     Some and/or all of Plaintiff's claims, and/or the relief requested in the FAC are preempted by federal laws and regulations, including under the doctrines of express and implied preemption.

**Ninth Affirmative Defense**

**(Offset)**

9.     Even if Plaintiff was entitled to any monetary relief, which Nutra Holdings denies, Nutra Holdings is entitled to offset them by any benefits received by Plaintiff from his and/or others' use of the Products.

**Tenth Affirmative Defense**

**(Unclean Hands)**

10.     Plaintiff's claims are barred by the doctrine of unclean hands. Upon information and believe, Plaintiff returned the Androsurge product at issue and received a full refund.

11.     Nutra Holdings further alleges, on information and belief, that Plaintiff is a serial returner on Amazon and such inequitable behavior bars recovery in this action.

**Eleventh Affirmative Defense**

**(Speculative Damages)**

12.     Any losses or damages allegedly sustained by Plaintiff, if any, are *de minimis*, remote, speculative, or transient and, hence, not cognizable by law, including because Plaintiff returned the Androsurge product at issue and received a full refund.

**Twelfth Affirmative Defense**

**(Statutes of Limitations, Repose)**

13.     Plaintiff's claims are barred and/or limited by the applicable statutes of limitation. Upon information and belief, Plaintiff filed this action after the date that triggers the applicable statute of limitations, and after the expiration of any applicable statutes of repose.

### Thirteenth Affirmative Defense

### (Failure to State a Claim)

14.     The FAC fails to state a claim upon which relief can be granted.

### Fourteenth Affirmative Defense

### (Unjust Enrichment)

15.     On information and belief, Plaintiff is barred from recovery to the extent that he would be unjustly enriched by any recovery, because he received the benefit of the bargain when he purchased the Product, and returned the Androsurge product at issue and received a full refund.

### Fifteenth Affirmative Defense

### (Misuse)

16.     Plaintiff's claims are barred to the extent Plaintiff misused the Products.

### Sixteenth Affirmative Defense

### (Safe Harbor/Compliance with Law)

17.     Plaintiff's claims and/or requests for relief are barred by the safe harbor doctrine, including because Defendant fully complied with all statutes and regulations in effect during the relevant time period.

### Seventeenth Affirmative Defense

### (Adequate Remedy at Law)

18.     Plaintiff's claims for injunctive, restitutionary, or other equitable relief are barred because there is an adequate remedy at law.

\* \* \* \* \*

19.     Nutra Holdings presently has insufficient information or knowledge on which to form a belief as to whether it may have additional, as yet unstated, affirmative defenses available

1   for its benefit. Nutra Holdings thereby reserves herein its right to assert additional affirmative

2   defenses in the event discovery indicates that such affirmative defenses would be appropriate.

3

4   DATED: July 29, 2024                                      STEPTOE LLP

5

6

7                                                                      Carol Brophy

8                                                                      Anthony Hopp (*Pro Hac Vice Forthcoming*)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANSWER AND AFFIRMATIVE DEFENSES
*Stephen v. Nutra Holdings, Inc., et al.*, Case No. 3:24-cv-00546-MLH-BLM